Virginia FINDLEY, Appellant,

v.

Lloyd McWHORTER and Ruby Frances Powers, Appellees.

No. 5443.

Court of Civil Appeals of Texas, Waco.

Aug. 21, 1975.

Rehearing Denied Sept. 11, 1975.

Johannes, Robertson & Wilkinson, Ronald L. Wilkinson, Dallas, for appellant.

Mahanay & Higgins, Robert M. Mahanay, Cleburne, for appellees.

## OPINION

JAMES, Justice.

This is a will contest case. The will had been previously probated in an uncontested proceeding prior to the filing of the contest in question. After trial before the court without a jury, the trial court entered judgment that Contestant take nothing. We affirm.

On December 30, 1971, Mark G. Haynes, the testator, executed the written will in question in the presence of two witnesses. Thereafter he died on July 5, 1973, at the age of eighty-two years. Proponent-Appellees Lloyd McWhorter and Ruby Frances Powers filed an application to probate the will on July 17, 1973, and thereafter on July 30, 1973, the will was probated in an uncontested proceeding with letters testamentary having been issued to Proponents.

Then on January 14, 1974, Contestant-Appellant Virginia Findley, testator's sister, filed the contest in controversy alleging among other things that testator lacked testamentary capacity on December 30, 1971, the day he executed the will, and prayed that the order probating the will be set aside.

Trial was had before the County Court of Johnson County, Texas, sitting without a jury, after which judgment was entered that Contestant take nothing, from which she appeals on three points of error.

█ Appellant's first point asserts the trial court "improperly relied upon the findings, in an uncontested hearing, of his immediate predecessor, rather than properly relying upon his own independent analysis of the evidence presented during the contested proceeding to which Appellant was a party." We overrule this point.

When the will was admitted to probate in the uncontested proceeding, the trial court's predecessor in office was the judge who probated the will. At the conclusion of the contested trial (which is the subject matter of this appeal), the trial court made a few remarks at the time its decision was announced. The court observed in a preliminary way that his predecessor in office had admitted the will to probate, and later on in his remarks the court said, "_ _ _ _ _ _ _ and evidently, my predecessor in office *also* thought the will should be admitted to probate by his findings at the hearing." (emphasis supplied.) By use of the term "also" the trial court manifestly did not base his ruling on the former action, but merely observed that his predecessor agreed with him. Without detailing the trial court's remarks, it is clear that his decision was not in any way based upon his predecessor's ruling, but was founded upon his own weighing of the evidence presented before him.

█ Appellant's second point contends "the court erred as a matter of law in its decision that the son of Contestant, Brooks Findley, would have an interest in the estate of Mark G. Haynes if it (the will) were not allowed to continue in probate." We overrule this point.

The testator had no children, his wife had predeceased him, and Contestant-Appellant Virginia Findley was testator's sister. Brooks Findley was the son of Contestant Virginia Findley. Brooks Findley actively participated in the trial, and he and his wife Mrs. Wanda Findley both testified as witnesses for Contestant. The record shows that for a time prior to testator's death, Brooks Findley served as guardian of Mark G. Haynes's person and estate, and that he (Brooks Findley) and his wife had asserted

claims against his uncle's estate, the exact nature and amounts of which are not disclosed by the record. Moreover, on February 15, 1972, about six weeks after testator executed the will in question, Brooks and Wanda Findley executed a warranty deed to the testator to a house and lot in Keene, Texas, and received $12,750.00 cash consideration therefor from the testator.

When the trial court was discussing his weighing of different aspects of the testimony presented at the trial, he remarked, "I have serious reservations about Mr. Findley and his wife since they have an interest in this estate if it were not allowed to continue in probate."

It is patent from the record that Brooks Findley as a nephew of the testator did not enjoy the status of an heir at law of Mark G. Haynes, because his mother Mrs. Virginia Findley was still alive and was a sister to Mr. Haynes. And certainly Mrs. Wanda Findley, the wife of Brooks Findley, enjoyed no status as an heir at law, since she was not related in any way to the deceased except by marriage. Therefore, when the trial court remarked that Mr. and Mrs. Brooks Findley had an "interest" in the estate, he clearly meant an interest in the sense that they were trying to help Mr. Findley's mother, and were interested in seeing that her contest was successful. Appellant's second point is overruled.

■ Appellant's third and final point in Appellant's brief and oral argument contends that the trial court's failure to find that the testator lacked testamentary capacity is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. *In re King's Estate* (Tex.Sup.Ct.1951), 150 Tex. 662, 244 S.W.2d 660. We cannot say from this record that such finding is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust, and therefore overrule this point.

■ The proper inquiry in a will contest on the ground of testamentary incapacity (as here) is the condition of the testator's mind on the day the will was executed, that is, on December 30, 1971. *Lee v. Lee* (Tex. Sup.Ct.1968), 424 S.W.2d 609.

In February of 1971, Mark G. Haynes and his wife Elizabeth, moved to Keene, Johnson County, Texas, from the State of Oregon. From February of 1971 until June 9, 1971, the Hayneses lived in the house with Brooks and Wanda Findley. In June 1971, the Hayneses moved into a house of their own located in Keene, Texas. In October 1971 Elizabeth Haynes died.

Dr. V. L. Thomas, M.D. examined Mark G. Haynes in July 1971. At this time Mr. Haynes complained of extreme letdown, weakness and hurting in his feet and legs, and appeared mentally confused. Dr. Thomas gave him Pavabid and potassium chloride to dilate his blood vessels and relieve his confusion.

Then on December 26, 1971, the testator for the second time was seen by Dr. Thomas, complaining that he was "restless, confused, apprehensive, and real tired." The doctor gave him some more medicine containing potassium, and at this time he went to a nursing home. Dr. Thomas saw him a third time on January 23, 1972, at which time he complained of "no energy, no ambition, gets tired real easy, and legs are real weak." The doctor continued him on the potassium to relieve his confusion; however, the doctor testified that Mr. Haynes was able to communicate his condition to him (the doctor) with accuracy enough that he relied upon it in prescribing medication.

In summary, Dr. Thomas's testimony was to the effect that Mr. Haynes was an elderly man who suffered from senility; that at times he was capable of understanding the nature of business and at other times he was incapable of doing so. However, Dr. Thomas could not say whether Mr. Haynes was capable or incapable on a given day, except those days when the doctor saw him; and specifically on cross-examination he testified that he expressed no opinion on Mr. Haynes's mental capabilities one way or the other on December 30, 1971, the date of

execution of the will. He did not see Mr. Haynes on that day. As stated, he had seen him four days previously on December 26, 1971, and twenty-four days afterwards, on January 23, 1972.

Mrs. Wanda Findley testified that on two occasions after Mrs. Haynes died and before t̲ execution of the will, Mr. Haynes attempted to feed food to the picture of his deceased wife. "He (Mr. Haynes) acted as if she were there." Moreover, she testified that Mr. Haynes suffered from hallucinations, saying that he would act as if there were people in the room, that "He kept a tire tool by the front door. I asked him, 'What do you keep that for, Uncle Mark?' And he said, 'Those mean men that keep coming in here—I have to use it.'"

Mrs. Jean Bowman, cashier of the bank at Keene, Texas, where Mr. Haynes had a safety deposit box, testified that in August and September, 1971, during a period of twenty banking days, Mr. Haynes made eleven visits to his safety deposit box. She testified that this was unusual; however, she did not know the purpose or purposes of these visits. Mrs. Bowman further remembered the occasion when Mr. Haynes came into the bank and signed the will, on which occasion two other people connected with the bank witnessed the will. She said, "I would have thought Mr. Haynes knew what he was doing." She had had many occasions to observe Mr. Haynes's conduct and demeanor, because he had often come in the bank to transact business, on many of which occasions she waited on him. She also said in her opinion during the latter part of 1971 that Mr. Haynes had sufficient mental capacity to transact his business affairs. She did say "there are times right before his death (July 1973) that I can't say he wasn't senile to an extent."

O. H. Calicott, an old friend, when asked if, in his opinion, Mark Haynes had the mental capacity to make a will, replied, "I feel that he did."

Ruby Lee Swanson, a lifelong acquaintance of the testator, said about six months after Mrs. Haynes's death, that she (Mrs. Swanson) and her husband talked to Mr. Haynes about buying his home for $12,-000.00. The deal did not go through, she said, because Mrs. Wanda Findley called her up and told her they would have to pay an additional $1250.00 for the lot. Mrs. Swanson testified that Mr. Haynes was very disappointed over the deal being dropped, and that his participation in these business discussions were very reasonable and rational. She further testified specifically that on December 30, 1971, the date the will was signed, that Mr. Haynes had testamentary capacity.

Sharon Sinclair, an attesting witness to the will and a bank employee testified, "He knew what he had," that "he always knew how to handle his money," that he executed the will with the formalities as recited in the will, and on that occasion he was sane and knew what he was doing.

Mr. Brooks Findley testified that in his opinion: "_____ I do not believe Uncle Mark was capable, during the stress of the times in which Aunt Elizabeth was alive and then following that, that he was capable of making a will and having the mental capacity to do so." He also testified that Mr. Haynes tried to feed food to his deceased wife's picture, that on one occasion after Mrs. Haynes's death that he thought he had his wife in the car and was going to take her for a ride. He also testified that Mr. Haynes was forgetful, and let his hazard insurance and his lodge dues lapse. However, this testimony is weighed against the undisputed facts that in February 1972, about six weeks after the will was signed, Mr. and Mrs. Findley conveyed to Mr. Haynes a house and lot and received from him $12,750.00 in money as consideration therefor. Also that Mr. Haynes filed his deed for record. Mr. Findley also testified that both he and his wife had financial claims against Mr. Haynes's estate, although the record does not show any formal claims filed, or what the nature or amount of such claims might be. Mr. Findley testi-

fied that there were times after June 1971 when his Uncle Mark had lucid intervals wherein he was capable of doing business, and "in the discussion of dollars, I think his attention would immediately come." He testified that at the time he gave the deed to Mr. Haynes that he was selling him only the house and not the lot, although the deed had no such exceptions, and that Mr. Haynes understood what he was telling him.

From this record as a whole, we cannot say the trial court's failure to find that Mr. Haynes lacked testamentary capacity is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. On the contrary, we believe there is strong evidence pointing toward the fact that Mr. Haynes had testamentary capacity at the time he signed the will, although we recognize that there is evidence both ways.

All of Appellant's points have been carefully considered, and are overruled. Judgment of the trial court is accordingly affirmed.

Affirmed.