Prestidge v. Central Freight Lines 















IN THE
TENTH COURT OF APPEALS
 

No. 10-95-077-CV

Â Â Â Â Â WAYNE P. PRESTIDGE AND
Â Â Â Â Â PAT PRESTIDGE,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellants
Â Â Â Â Â v.

Â Â Â Â Â CENTRAL FREIGHT LINES, INC.,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee


From the 40th District Court
Ellis County, Texas
Trial Court # 50,844
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â Wayne and Pat Prestidge appealed from a summary judgment rendered in favor of Central
Freight Lines. Prestidge filed a cost bond on March 1, 1995, and the transcript was filed in this
court on April 4. Although his brief was due on May 4, no appellant's brief has been filed. See
Tex. R. App. P. 74(k). Appellate Rule 74(l)(1) provides:
Civil Cases. In civil cases, when the appellant has failed to file his brief in the time
prescribed, the appellate court may dismiss the appeal for want of prosecution, unless
reasonable explanation is shown for such failure and that appellee has not suffered
material injury thereby. The court may, however, decline to dismiss the appeal,
whereupon it shall give such direction to the cause as it may deem proper.
Id. 74(l)(1).
Â Â Â Â Â Â More than thirty days have passed since Prestidge's brief was due. We notified him of this
defect by letter on June 9. See id. 60(a)(2), 83. He has not responded to our letter showing
grounds for continuing the appeal nor has he provided a reasonable explanation for failing to file
a brief. Therefore, this appeal is dismissed for want of prosection. See id. 74(l)(1). 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â PER CURIAM

Before Justice Cummings, 
Â Â Â Â Â Â and Justice Vance
Â Â Â Â Â Â (Chief Justice Thomas not participating)
Dismissed for want of prosecution
Opinion delivered and filed June 28, 1995
Do not publish 



t-align:justify;text-indent:.5in;line-height:200%'>Â 

Relators also offered the testimony of a
guardian ad litem, Janet Traylor, who had been appointed for the mother Ophelia
because of questions regarding her mental competence raised in a Dallas County criminal proceeding.  Traylor was prepared to testify about OpheliaÂs
competence and her consent to RelatorsÂ suit.Â  Respondent sustained the
DepartmentÂs objection to her testimony but permitted Relators to make an offer
of proof.Â  According to Traylor, Ophelia was ultimately found competent to
stand trial, and a jury found her not guilty by reason of insanity of
assaulting James.Â  Traylor testified that Ophelia had twice told her that she
wanted her child to be adopted by her aunt and uncle or one of the other
Relators if they were unable to adopt him.Â  Relators offered in evidence
OpheliaÂs unsworn statement in which she expresses her desire for Relators to
adopt her child.

Respondent granted the plea to the
jurisdiction, stating on the record his findings that: (1) Relators failed to
establish that Âthe childÂs present circumstances would significantly impair
the childÂs physical health or emotional developmentÂ; (2) Relators failed to
establish that Ophelia was competent to consent to RelatorsÂ suit; (3) Relators
failed to establish that James voluntarily consented to RelatorsÂs suit and/or
understood that by relinquishing his parental rights he would not have the
right to continue to see his child.

The hearing in which Respondent made the
challenged rulings occurred on August 7.Â  Relators filed their original
petition and a motion for emergency stay[4]
on August 12.Â  We issued a stay order the next day and requested a response to
the petition.Â  After receiving responses from the Department and from the foster
parents, we issued a memorandum opinion on September 23 denying the petition
and lifting the stay order.

Relators filed a motion for rehearing
and for emergency stay on October 2.[5]Â 
We requested responses to the motion for rehearing which were due on October
7.Â  After receiving responses from Respondent and several parties, we again
stayed the trial proceedings in the DepartmentÂs suit and requested
supplemental pleadings responsive to the merits of RelatorsÂ mandamus petition
or their motion for rehearing which were due on October 18.Â  We have received
supplemental responses from the Department and from the foster parents.

Relators recently filed a motion for
leave to supplement their mandamus petition and the mandamus record.Â  Relators
have filed a reporterÂs record from the August 7 hearing in which the
complained-of rulings were made.Â  They have also tendered a supplemental
mandamus petition which appears to differ from the original petition only by
the inclusion of citations to the reporterÂs record.

Deficiencies in RelatorsÂ Pleadings

The Department and the foster parents
note three deficiencies in the form of RelatorsÂ pleadings.Â  They contend: (1)
RelatorsÂ certification does not comply with Rule of Appellate Procedure
52.3(j); (2) the petition does not provide record references; and (3) Relators
failed to provide a reporterÂs record from the hearing in which Respondent made
the complained-of rulings.

The Department and the foster parents
similarly urge us to deny RelatorsÂ motion for rehearing because they should
not now be permitted to cure the deficiencies noted.Â  And although the parents
have not previously made an appearance in this original proceeding, both have
now filed responses in support of RelatorsÂ motion for rehearing.

We begin with Relators failure to
provide a reporterÂs record or citations in their petition to that record.Â 
After we initially denied their mandamus petition, Relators acted to correct
these deficiencies.Â  The issue at this juncture is whether they should be
permitted to do so at this late date.Â  Rule 52.7, which governs supplementation
of the mandamus record, provides, ÂAfter the record is filed, relator or any
other party to the proceeding may file additional materials for inclusion in
the record.ÂÂ  Tex. R. App. P. 52.7.Â 
The parties refer to cases construing the rules governing supplementation of
the appellate record for guidance.Â  Although the rules are worded
differently,[6]
they all reflect a generally permissive approach to supplementation of the
record.Â  See Crown Life Ins. Co. v. Estate of Gonzalez, 820 S.W.2d 121,
121 (Tex. 1991) (per curiam) (former Rule 55 was Âto be liberally construed so
that the decisions of the courts of appeals turn on substance rather than
procedural technicalityÂ); Aluminum Chems. (Bolivia) Inc. v. Bechtel Corp.,
28 S.W.3d 49, 50 (Tex. App.ÂTexarkana, order) (Ânew Rule 34.6(d) is even more
lenientÂ), disp. on merits, 28 S.W.3d 64 (Tex. App.ÂTexarkana 2000, no
pet.); Roberts v. Roberts, 999 S.W.2d 424, 438 (Tex. App.ÂEl Paso 1999, no pet.) (similarly describing Rule 34.6(d) as Âmore lenientÂ).Â  In
addition, our research has disclosed little authority regarding supplementation
of a mandamus record.[7]Â 
Thus, we look to the cases regarding supplementation of the appellate record
for guidance.

The cases cited by Relators focus on
supplementation of the record before the appeal has been submitted for decision.Â 
See, e.g., Crown Life Ins., 820 S.W.2d at 121; Baker v. Trand, Inc.,
931 S.W.2d 405, 407 (Tex. App.ÂWaco 1996, no writ); Riggs v. Tech/III, Inc.,
836 S.W.2d 302, 303 & n.1 (Tex. App.ÂDallas 1992, no writ).Â  In this
regard, we find a case cited by the Department more persuasive because it
addresses supplementation after the appellate court has issued its opinion.Â  See
K & S Interests, Inc. v. Tex. Am. Bank/Dallas, 749 S.W.2d 887 (Tex. App.ÂDallas 1988, writ denied).

In K & S Interests, the Dallas Court dismissed the appeal for want of jurisdiction because the order in question
appeared to be a non-appealable interlocutory order.Â  Id. at 891.Â  After
that decision, the appellant (like Relators here) filed a motion for rehearing
contemporaneously with a motion to supplement the record.Â  The appellant sought
to supplement the record with additional documents to establish that the
challenged order was appealable.Â  Id.Â  The court declined this request.

We recognize that Texas Rules of
Appellate Procedure 55(b) and (c) grant this court wide discretion to
supplement the transcript or statement of facts so as to include omitted
matter.Â  However, such discretion should not be exercised, in the absence of
some unusual circumstance, so as to permit new material to be filed after the
appellate court has written its opinion and rendered its judgment.Â  Such action
would be contrary to the spirit and purpose of Rules 54(a) (setting forth the
appellate timetable) and 50(d) (placing the burden on appellant to see that a
sufficient record is presented to show error requiring reversal) and would
interfere with the orderly administration of justice.

Â 

Id. at 891-92 (citations omitted).

Â Â Â Â Â Â Â Â Â Â Â  We accept this Âunusual
circumstanceÂ test as appropriate for evaluating RelatorsÂ request to
supplement the record.Â  See Samples v. State, No. 07-95-00193-CR, 1996 Tex. App. LEXIS 5773, at *2 (Tex. App.ÂAmarillo Dec. 20, 1996, pet. refÂd) (op. on rehÂg)
(not designated for publication); Jackson v. S.P. Leasing Corp., 774
S.W.2d 673, 677-78 (Tex. App.ÂTexarkana 1989, writ denied) (op. on second
motion for rehÂg); K & S Interests, 749 S.W.2d at 891; cf. Silk
v. Terrill, 898 S.W.2d 764, 765 (Tex. 1995) (per curiam) (appellate court
abused its discretion by denying motion to supplement record filed with motion
for rehearing).

Â Â Â Â Â Â Â Â Â Â Â  ÂUnusual circumstancesÂ
exist in this case because of the confluence between the interests at stake,
the requirements of the appellate rules, and the deadlines imposed by the
Family Code for state-initiated termination proceedings.Â  See Castaneda v. Tex. DepÂt of Protective & Regulatory Servs., 148 S.W.3d 509, 521 (Tex. App.ÂEl Paso 2004, no pet.) (granting post-submission supplementation of record
because of Âthe constitutional dimension of the parent-child relationshipÂ).

Â Â Â Â Â Â Â Â Â Â Â  The Department (and the
foster parents) seek to terminate the parent-child relationship.Â  Relators seek
to preserve a familial relationship with the child even if parental rights are
terminated.Â  The Family Code gives preference to relative placements when
parental rights are terminated.Â  See Act of May 29, 2005, 79th Leg.,
R.S., ch. 268, Â§ 1.33, 2005 Tex. Gen. Laws 621, 633 (amended 2009) (current version
at Tex. Fam. Code Ann. Â§ 262.114
(Vernon Supp. 2009)).[8]Â 
And the extended dismissal deadline (December 29, 2009) under section 263.401
is fast approaching.Â  Id. Â§ 263.401 (Vernon 2008).Â  We hold that these
are Âunusual circumstancesÂ which warrant supplementation of the record.Â  See
Castaneda, 148 S.W.3d at 521.Â  Thus, we grant RelatorsÂ motion for leave to
supplement the record, and we have filed and will consider RelatorsÂ
supplemental mandamus petition.

Â Â Â Â Â Â Â Â Â Â Â  RelatorsÂ counsel provided
the following affidavit for verification of the mandamus petition:

I am the attorney representing relators,
Dolores and Lupe Cervantes, Olga Rubio, Michael Abelino and Ashli Michelle
Cervantes, in this petition for Writ of Mandamus.Â  I am licensed to practice
law in the state of Texas.Â  I have thorougly reviewed the CourtÂs file in this
matter.Â  The facts stated in this affidavit are within my personal knowledge
and true and correct.

Â 

Attached to this affidavit are true and
correct copies of the following [10] exhibits:

Â 

According to Rule 52.3(j), ÂThe person
filing the petition must certify that he or she has reviewed the petition and
concluded that every factual statement in the petition is supported by
competent evidence included in the appendix or record.ÂÂ  Tex. R. App. P. 52.3(j).

Â Â Â Â Â Â Â Â Â Â Â  RelatorsÂ counsel has made
no effort to amend her affidavit though its deficiencies were identified by the
Department and the foster parents two months ago.Â  Nevertheless, given the
exigencies at hand and the fact that the reporterÂs record is properly
certified and the exhibits attached to the petition are adequately certified,
we will disregard counselÂs failure to comply with Rule 52.3(j).Â  See Tex. R. App. P. 2; In re Cahill,
267 S.W.3d 104, 106 (Tex. App.ÂCorpus Christi 2008, orig. proceeding); Cronen
v. Smith, 812 S.W.2d 69, 70 (Tex. App.ÂHouston [1st Dist.] 1991, orig.
proceeding).

Standard of Review

Â Â Â Â Â Â Â Â Â Â Â  The general standard of
review in mandamus proceedings is well-established.

Mandamus relief is proper to correct a
clear abuse of discretion when there is no adequate remedy by appeal.Â  A court
of appeals improperly issues mandamus if the trial court did not abuse its
discretion or if the record fails to demonstrate the lack of an adequate remedy
on appeal.

Â 

In re Tex. DepÂt of Family & Protective
Servs., 273 S.W.3d 637,
643 (Tex. 2009) (orig. proceeding) (citations omitted).

Â Â Â Â Â Â Â Â Â Â Â  When the issue turns on the
trial courtÂs interpretation of a statute, we review the ruling de novo.Â  Id. at 642.Â  ÂA trial court has no discretion in determining what the law is or
properly applying the law.Â  If the trial court fails to properly interpret the
law or applies the law incorrectly, it abuses its discretion.ÂÂ  Id. at 642-43 (citations omitted).

Â Â Â Â Â Â Â Â Â Â Â  The predominant issue in
this proceeding is whether Relators established standing to file a suit
affecting the parent-child relationship.Â  This issue turns on RespondentÂs
interpretation of a statute, and thus we review his ruling de novo.Â  See
In re Kelso, 266 S.W.3d 586, 590 (Tex. App.ÂFort Worth 2008, orig.
proceeding); In re Vogel, 261 S.W.3d 917, 920-21 (Tex. App.ÂHouston [14th Dist.] 2008, orig. proceeding).

Â Â Â Â Â Â Â Â Â Â Â  ÂWe review the trial court's
determination of a partyÂs standing to file a SAPCR by construing the pleadings
in favor of the petitioner and looking to the pleaderÂs intent.ÂÂ  Kelso,
261 S.W.3d at 589-90 (citing In re M.J.G., 248 S.W.3d 753, 757 (Tex. App.ÂFort Worth 2008, no pet.)); accord Vogel, 261 S.W.3d at 921.

[W]e take as true all evidence favorable
to the [intervenors] and indulge every reasonable inference and resolve any
doubts in their favor.Â  See Tex. DepÂt of Parks & Wildlife v. Miranda,
133 S.W.3d 217, 228 (Tex. 2004).Â  If the evidence creates a fact question
regarding the standing issue, then the trial court must allow the issue to be
resolved by the fact finder.Â  See id.Â  However, if the relevant evidence
is undisputed or fails to raise a fact question on the standing issue, then the
[intervenors] do not have standing to sue as a matter of law.Â  See id.

Â 

M.J.G., 248 S.W.3d at 758.

Section 102.003(a)(10)

Â Â Â Â Â Â Â Â Â Â Â  Dolores and Lupe claim
standing under section 102.003(a)(10) of the Family Code.Â  That statute
provides in pertinent part that a SAPCR may be filed by Âa person designated as
the managing conservator in a revoked or unrevoked affidavit of relinquishment
under Chapter 161.ÂÂ  Tex. Fam. Code Ann.
Â§ 102.003(a)(10) (Vernon Supp. 2009).Â  Respondent ruled that Dolores and Lupe
failed to establish standing because the father ÂJamesÂsÂ affidavit of
relinquishment was not made knowingly and voluntarily.Â  Dolores and Lupe
contend in their second issue that Respondent abused his discretion by so ruling.

Â Â Â Â Â Â Â Â Â Â Â  James testified that he
understood, even if Dolores and Lupe became his childÂs managing conservators,
he Âcould not legally force [them] to allow [him] to see his childÂ if his
rights were terminated.Â  He testified that he understood he may never see his
child again if Respondent accepted the relinquishment affidavit.Â  But James
also testified that he believed he had a right to see his child even after
signing the affidavit.Â  He testified that he understood the affidavit was
irrevocable.Â  When he signed the affidavit, he thought he may Âbe able to get
[his] rights back.ÂÂ  He thought he would continue to have visitation rights
after signing.Â  He testified that, when he signed the affidavit, he wanted
Dolores and Lupe to raise his child if his rights were terminated.Â  He
explained, ÂI want my child to go with [Dolores and Lupe], and I would like to
be able to visit him as much as possible.ÂÂ  When Respondent personally
questioned James about his understanding, James stated that he believes he
Âshould have ongoing rightsÂ to visit his child even after signing the
affidavit.

Â Â Â Â Â Â Â Â Â Â Â  JamesÂs testimony could be
interpreted in at least three ways.Â  First, as Respondent essentially found, he
harbors an erroneous belief that he will still possess legal rights with regard
to the child even if his rights are terminated.Â  Second, he believes he should
have continuing access to the child and disagrees with the law on this
subject.Â  Or third, he fully understands the legal effects of the
relinquishment affidavit but harbors the hope that he will still be given
access.

Â Â Â Â Â Â Â Â Â Â Â  The Department relies on
cases which stand for the proposition that termination of parental rights
cannot be based on an involuntarily executed relinquishment affidavit.[9]Â 
See Jones v. Tex. DepÂt of Protective & Regulatory Servs., 85 S.W.3d
483, 495 (Tex. App.ÂAustin 2002, pet. denied); In re V.R.W., 41 S.W.3d 183,
192-93 (Tex. App.ÂHouston [14th Dist.] 2001, no pet.); Vela v. Marywood,
17 S.W.3d 750, 759 (Tex. App.ÂAustin 2000), pet. denied, 53 S.W.3d 684 (Tex. 2001) (per curiam).Â  Dolores and Lupe respond that a different standard should apply
when reviewing an affidavit for standing than when reviewing an affidavit for
termination.Â  We agree.Â  See Vogel, 261 S.W.3d at 922 n.5 (Â[S]tanding
to sue does not mean a right to win, but merely a right to be heard in court.Â)
(citing In re S.S.J.-J., 153 S.W.3d 132, 138 (Tex. App.ÂSan Antonio 2004,
no pet.)).[10]

Â Â Â Â Â Â Â Â Â Â Â  Dolores and Lupe rely on Lumbis
v. Texas Department of Protective and Regulatory Services, 65 S.W.3d 844
(Tex. App.ÂAustin 2002, pet. denied), to support their position that JamesÂs
affidavit was voluntarily made, even if he hoped or believed he would continue
to have access to his child.Â  The facts of Lumbis appear closer to the
facts of this case than do the facts presented in the cases relied on by the
Department and the foster parents.

Â Â Â Â Â Â Â Â Â Â Â  The Department told Lumbis
it would try to arrange an open adoption whereby Lumbis might be
able to have post-adoption contact if the adoptive parents so agreed.Â 
That Lumbis believed she would be able to convince the adoptive parents to
allow her to maintain contact does not render her decision involuntary.Â  Lumbis
was represented by counsel throughout the process.Â  She understood the meaning
of "irrevocable," and discussed the relinquishment extensively with
her attorney before she signed it.Â  Lumbis was not misled into believing that
she was guaranteed post-adoption contact, as was the case in Vela.Â 
Everything in the affidavit and termination order concerning any continuing
contact with the children relates only to contact up to the time of their
adoption, not after.Â  There is no evidence that Lumbis was guaranteed an open
adoption or that the adoptive family would comply with LumbisÂs wishes to stay
in contact with her children.Â  On the contrary, Lumbis admitted she knew any
post-adoption contact would depend on the adoptive parentsÂ consent.

Â 

Id. at 850.

Â Â Â Â Â Â Â Â Â Â Â  We need not and do not
decide whether JamesÂs relinquishment affidavit was sufficiently voluntary as
to support termination of his parental rights.Â  See Vogel, 261 S.W.3d at
922 n.5; S.S.J.-J., 153 S.W.3d at 138. Â That James believed he should or
would be allowed to maintain contact Âdoes not render [his] decision
involuntary,Â certainly not for purposes of determining whether he has
designated Dolores and Lupe as managing conservators in the event his parental
rights are terminatedÂwhich is the test for standing under section
102.003(a)(10).Â  See Lumbis, 65 S.W.3d at 850-51; see also Tex. Fam. Code Ann. Â§ 102.003(a)(10).

Â Â Â Â Â Â Â Â Â Â Â  Thus, we sustain DoloresÂs
and LupeÂs second issue and hold that Respondent abused his discretion by
finding that JamesÂs relinquishment affidavit was not adequate under section
102.003(a)(10) to confer standing on them.

Section 102.004(a)(2)

Â Â Â Â Â Â Â Â Â Â Â  Olga, Michael and Ashli
claim standing under section 102.004(a)(2) of the Family Code which provides in
pertinent part that a Ârelative of the child within the third degree by
consanguinityÂ may file a SAPCR Âif there is satisfactory proof to the court
thatÂ  .Â  .Â  .Â  both parents, the surviving parent, or the managing conservator
or custodian either filed the petition or consented to the suit.ÂÂ  Tex. Fam. Code Ann. Â§ 102.004(a)(2) (Vernon
Supp. 2009).

Â Â Â Â Â Â Â Â Â Â Â  They contend in their first
issue that Respondent erred by ruling that the parents must ÂjointlyÂ consent
to suit to establish standing under this statute.[11]Â 
They contend in their fifth issue that Respondent erred by excluding the
testimony of the guardian ad litem for the mother Ophelia on the issue of her
consent.

Â Â Â Â Â Â Â Â Â Â Â  In his oral rulings,
Respondent stated, ÂI do not believe that there has been evidence that has been
presented to show that both parents jointly consented to filing the petition or
consenting to the suit.Â  I think there continues to be a question regarding the
competency of [Ophelia].Â

Â Â Â Â Â Â Â Â Â Â Â  With regard to the idea of
ÂjointÂ consent, it is not entirely clear from the record that this is what
Respondent meant by his comment.Â  But to remove any doubt, we hold that section
102.004(a)(2) plainly requires the consent of Âboth parents,Â but the statute
does not require that parents give their consent Âjointly.Â

Â Â Â Â Â Â Â Â Â Â Â  James testified at the
hearing that he consented to OlgaÂs, MichaelÂs and AshliÂs petition for
managing conservatorship.Â  See In re A.M.S., 277 S.W.3d 92, 98 (Tex. App.ÂTexarkana 2009, no pet.) (oral consent is sufficient even if given after the
petition is filed).Â  The Department does not dispute that oral consent may be
sufficient but argues instead that Respondent had the discretion to choose not
to believe JamesÂs testimony on this issue.Â  See, e.g., Garner v. Garner,
200 S.W.3d 303, 308 (Tex. App.ÂDallas 2008, no pet.) (ÂAs the fact finder, the
trial court had the discretion to disbelieve appellantÂs testimony and was not
required to accept appellantÂs evidence of his income and net resources as
true.Â).

Â Â Â Â Â Â Â Â Â Â Â  When a trial court sits as
finder of fact, the court certainly has the discretion to disbelieve a
witnessÂs testimony.Â  Id.Â  When a court is deciding the issue of
standing however, itÂs discretion in this regard is limited.Â  The court must Âtake
as true all evidence favorable to the [petitioners] and indulge every
reasonable inference and resolve any doubts in their favor.ÂÂ  M.J.G.,
248 S.W.3d at 758 (quoting Miranda, 133 S.W.3d at 228); see Kelso,
266 S.W.3d at 590 (Âeven considering the evidence in the light most favorable
to the [petitioners], the evidence does not [establish standing]Â).

Â Â Â Â Â Â Â Â Â Â Â  On the issue of standing,
the court has no discretion to disbelieve the testimony of a witness favorable
to the party asserting standing but rather must accept such testimony as true.Â 
 Id.Â  Thus, Respondent had no discretion to reject JamesÂs testimony
regarding his consent to OlgaÂs, MichaelÂs and AshliÂs petition.

Â Â Â Â Â Â Â Â Â Â Â  With regard to OpheliaÂs
consent, Olga, Michael and Ashli attempted to rely on the testimony of
OpheliaÂs guardian ad litem Janet Traylor and an unsworn ÂaffidavitÂ Ophelia
executed.Â  The Department and the foster parents objected to Traylor testifying
on OpheliaÂs behalf regarding the issue of consent.Â  Under questioning by
Respondent, Traylor stated that Ophelia was then at the Vernon State Hospital because she had been found not guilty of a crime by reason of insanity.Â  She
explained that this verdict related to her mental status at the time of the
offense and not at the time of trial or afterward when Traylor discussed the
termination suit with her.Â  After hearing this testimony, Respondent informed
the parties that he would not permit Traylor to testify.

Â Â Â Â Â Â Â Â Â Â Â  Nevertheless, Respondent
permitted Olga, Michael and Ashli to make an offer of proof.Â  Traylor testified
that Ophelia consented to OlgaÂs, MichaelÂs and AshliÂs suit.Â  Regarding
OpheliaÂs competence, Traylor testified that Ophelia had initially been found
by the criminal court to be incompetent to stand trial.Â  She was later found
competent and at trial was found not guilty by reason of insanity.Â  Traylor
explained that a criminal defendant who is found not guilty by reason of insanity
for an offense involving dangerous conduct must be committed for no more than
thirty days after trial for an evaluation of the defendantÂs present mental
condition..Â  See Tex. Code Crim.
Proc. Ann. art. 46C.251 (Vernon 2006).

Â Â Â Â Â Â Â Â Â Â Â  Traylor and OpheliaÂs attorney
went to visit her two days before the hearing.Â  They had a lengthy discussion
with her about the termination suit and RelatorsÂ efforts to intervene.Â  Based
on her experiences as an attorney (as prosecutor, defense attorney, CPS
attorney, and attorney ad litem), Traylor opined that Ophelia was competent and
fully understood their conversation and the statement she signed consenting to
RelatorsÂ intervention.Â  In the statement, Ophelia unequivocally consented to
OlgaÂs, MichaelÂs and AshliÂs suit.

Â Â Â Â Â Â Â Â Â Â Â  The Department and the
foster parents contend that Relators have failed to preserve the admissibility
of TraylorÂs testimony or OpheliaÂs statement because they did not object when
Respondent informed the parties that he would not permit Traylor to testify.Â 
To the extent preservation is required in this regard, we disagree.Â  Rule of
Evidence 103(a)(2) provides that a party must make an offer of proof to
complain on appeal of a ruling excluding evidence.Â  Tex. R. Evid. 103(a)(2).Â  Relators did so in this instance.

Â Â Â Â Â Â Â Â Â Â Â  Respondent informed the
parties that he would not permit Traylor to testify after OpheliaÂs attorney
explained her then-current status with Vernon State Hospital.Â  Nevertheless,
lay testimony is admissible on the issue of a personÂs capacity to sign a legal
document.Â  See Yancy v. United Surgical Partners IntÂl, Inc., 236 S.W.3d
778, 782 n.5 (Tex. 2007) (ÂtestatorÂs mental condition on [date will signed]
may be determined from lay opinion testimonyÂ) (quoting Lee v. Lee, 424
S.W.2d 609, 611 (Tex. 1968)).Â  Respondent should have accepted TraylorÂs
testimony regarding OpheliaÂs competence as true. Â See M.J.G., 248
S.W.3d at 758; see also Kelso, 266 S.W.3d at 590.Â  Thus, Respondent
abused his discretion insofar as he refused to permit Traylor to testify about
OpheliaÂs competence to sign the statement of consent.Â  Respondent likewise
should have accepted OpheliaÂs statement of consent as true.Â  Id.

Â Â Â Â Â Â Â Â Â Â Â  Olga, Michael and Ashli
presented evidence that James and Ophelia both consented to their suit for
managing conservatorship.Â  It is undisputed that Olga, Michael and Ashli are
related to the child within the third degree of consanguinity.Â  See Tex. Gov't Code Ann. Â§ 573.023 (Vernon
2004). Â Thus, we sustain their first and fifth issues[12]
and hold that Respondent abused his discretion by finding that JamesÂs and
OpheliaÂs consent was not adequate under section 102.004(a)(2) to confer
standing. 

Adequate Remedy

Â Â Â Â Â Â Â Â Â Â Â  Relators must also show that
they have no adequate remedy by appeal.Â  Tex. DepÂt of Family &
Protective Servs., 273 S.W.3d at 643.Â  Here, given the competing interests
which we have already described and the statutory time limits, we hold that
Relators do not have an adequate remedy by appeal.Â  See id. at 645; Kelso,
266 S.W.3d at 591.

Conclusion

Â Â Â Â Â Â Â Â Â Â Â  Respondent granted the
DepartmentÂs plea to the jurisdiction Âand d[id] strike [RelatorsÂ]
pleadings.ÂÂ  Relators contend that Respondent abused his discretion by striking
their pleadings and by denying their motion to consolidate their suit with the
DepartmentÂs.Â  However, Respondent never ruled on the motion to consolidate
because he struck RelatorsÂ pleadings.

Â Â Â Â Â Â Â Â Â Â Â  In RelatorsÂ prayer for
relief, they ask that we issue a writ (1) commanding Respondent to vacate the
order striking their pleadings and (2) ordering Respondent to consolidate the
lawsuit.Â  Because Respondent never ruled on the motion to consolidate, we do
not address the propriety of consolidation.

Â Â Â Â Â Â Â Â Â Â Â  We conditionally grant the requested
writ in part.Â  A writ will issue only if Respondent fails to advise this Court
in writing before 5:00 p.m. on Friday, November 13, 2009 that he has vacated
his order granting the DepartmentÂs plea to the jurisdiction.Â  We further lift
the stay issued October 8, 2009.

Â Â Â Â Â Â Â Â Â Â Â  

FELIPE REYNA

Justice

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

(Chief
Justice Gray dissenting)

(Justice Davis concurs in the
decision to grant rehearing, the decision to grant leave to supplement the
record, and the judgment conditionally granting mandamus relief.Â  He does
not join Justice ReynaÂs opinion on rehearing.)

Writ
conditionally granted in part

Opinion
delivered and filed November 10, 2009

[OT06]








Â 









[1]
Â Â Â Â Â Â Â Â Â Â Â Â Â  To protect the
identity of the child who is the subject of this suit, we shall refer
hereinafter to the parents by pseudonyms.Â  See Tex. Fam. Code Ann. Â§ 109.002(d) (Vernon 2008); Tex. R. App. P. 9.8(b)(1).

Â 





[2]
Â Â Â Â Â Â Â Â Â Â Â Â Â  A guardian ad litem
had been appointed for James in April 2009 because he was hospitalized
following a biking accident.Â  According to the testimony, the guardian ad litem
played no role in JamesÂs signing of either affidavit.

Â 





[3]
Â Â Â Â Â Â Â Â Â Â Â Â Â  Respondent admitted
this affidavit only for the limited purpose of showing JamesÂs state of mind on
the date it was signed.





[4]
Â Â Â Â Â Â Â Â Â Â Â Â Â  When Relators filed
their original petition, the DepartmentÂs suit for termination of parental
rights was set for jury trial on August 17.

Â 





[5]
Â Â Â Â Â Â Â Â Â Â Â Â Â  When Relators filed
their motion for rehearing, the termination suit was set for jury trial on
October 12.





[6]
Â Â Â Â Â Â Â Â Â Â Â Â Â  Rule 34.5(c) governs
supplementation of the clerkÂs record and provides in pertinent part:

Â 

If a relevant item has been omitted from
the clerkÂs record, the trial court, the appellate court, or any party may by
letter direct the trial court clerk to prepare, certify, and file in the
appellate court a supplement containing the omitted item.

Â 

Tex. R. App. P. 34.5(c)(1).

Â 

Rule 34.6(d) governs supplementation of the reporterÂs
record and provides in pertinent part:

Â 

If anything relevant is omitted from the
reporterÂs record, the trial court, the appellate court, or any party may by
letter direct the official court reporter to prepare, certify, and file in the
appellate court a supplemental reporterÂs record containing the omitted items.

Â 

Id. 34.6(d).





[7]
Â Â Â Â Â Â Â Â Â Â Â Â Â  But see In re
Lynd Co., 195 S.W.3d 682,
684 n.1 (Tex. 2006) (orig. proceeding) (permitting supplementation of mandamus
record under Rule 52.7 after real party in interest argued that relief should
be denied for lack of transcript); In re Houseman, 66 S.W.3d 368, 373-74
(Tex. App.ÂBeaumont 2001, orig. proceeding) (holding relatorÂs failure to provide
record ÂcuredÂ under Rule 52.7(b) by real party in interestÂs provision of
record); Woods v. Alvarez, 925 S.W.2d 119, 121 (Tex. App.ÂCorpus Christi,
orig. proceeding) (supplementing mandamus record sua sponte), mand.
granted on other grounds, Bridgestone/Firestone, Inc. v. Thirteenth
Court of Appeals, 929 S.W.2d 440 (Tex. 1996) (per curiam).





[8]
Â Â Â Â Â Â Â Â Â Â Â Â Â  The current version of this statute applies only to suits filed
on or after September 1, 2009.Â  See Act of May 27, 2009, 81st Leg., R.S.,
ch. 856, Â§ 4, 2009 Tex. Sess. Law Serv. 2111-12(Vernon) (to be codified as an
amendment of Tex. Fam. Code Ann.
Â§ 262.114).





[9]
Â Â Â Â Â Â Â Â Â Â Â Â Â  The Department also
argues that JamesÂs affidavit is involuntary because he did not consult with
his guardian ad litem before signing it.Â  However, it does not appear from the
record that Respondent rejected the affidavit on this basis.

Â 





[10]
Â Â Â Â Â Â Â Â Â Â Â  The original source
for this quotation is a 1993 report by the Family Law Section of the State
Bar.Â  See Doncer v. Dickerson, 81 S.W.3d 349, 356 (Tex. App.ÂEl Paso 2002,
no pet.) (quoting John J. Sampson, Vol. 93-2 State
Bar of Texas Section ReportÂFamily Law 14 (1993)).





[11]
Â Â Â Â Â Â Â Â Â Â Â  As earlier noted,
Respondent also found that Olga, Michael and Ashli had failed to establish
standing because there was no evidence or claim under section 102.004(a)(1)
that Âthe childÂs present circumstances would significantly impair the childÂs
physical health or emotional development.ÂÂ  See Tex. Fam. Code Ann. Â§ 102.004(a)(1) (Vernon Supp. 2009).Â 
However, subsections (1) and (2) of section 102.004(a) are stated
disjunctively.Â  Id. Â§ 102.004(a).Â  Thus, Olga, Michael and Ashli had to
show either Âsignificant impairmentÂ under (1) or parental consent under (2)
(but not both) to establish standing.





[12]
Â Â Â Â Â Â Â Â Â Â Â  We do not reach the
remainder of the issues presented.