Lon LEE et al., Petitioner,

v.

John W. LEE, Jr., et al., Respondent.

No. B–282.

Supreme Court of Texas.

Feb. 14, 1968.

Paul Donald, Marvin F. London, Bowie, Ernest May, Fort Worth, for petitioner.

Fillmore & Fillmore, H. W. Fillmore, Wichita Falls, for respondent.

HAMILTON, Justice.

This case involves a suit to set aside the probate of the will of John W. Lee, Sr., which was executed October 2, 1961. Testator died May 22, 1964, at ninety (90) years of age. The will contained a self-proving clause and was probated on June 22, 1964, in the County Court of Montague County. Following probate this action was brought in the county court to set aside the Probate of the will.[1] Lon Lee and Gladys Lee Barbee, the Contestants, Petitioners here, were children of testator and received a specific bequest of $10.00 under the terms of the will.[2] The Proponents, Respondents here, are the Independent Executor and the remaining children, the residuary beneficiaries under the will.[3]

The county court rendered judgment denying the contest and declared that the will was properly admitted to probate. The District Court on a jury verdict that testator was of "unsound mind" rendered judgment for contestants; the Court of Civil Appeals reversed this judgment and rendered judgment admitting the will to probate. It held that the evidence offered by contestants could at most only create a suspicion of incapacity at intermittent periods not associated with the critical date of the execution of the will and that there was no evidence in support of the jury's answer that testator was of "unsound mind."

The Court of Civil Appeals extensively reviewed the evidence. The evidence in behalf of proponent shows that testator came unaccompanied to the office of scrivener, Earl Fitts, Esq., some few days prior to the execution of the will, and designated to Fitts the proposed disposition of his property. Testator returned after the will had been drafted, again unaccompanied, and executed it. As noted above the will contained a self-proving clause and the two witnesses and the notary, all longtime ac-

1. Since this is a suit to annul the probate of a will already probated, the burden was upon contestants to establish incapacity by a preponderance of the evidence. Chambers v. Winn, 137 Tex. 444, 154 S.W.2d 454 (1941).

2. "It is further my will and desire that the Executor hereinafter named, to wit: John W. Lee Jr., shall pay out of my estate the sum of Ten (10.00) Dollars, to each of my two (2) children named as follows: LON LEE AND GLADYS (LEE) BARBEE. The said Ten ($10.-00) Dollar payment to the said Lon Lee and Gladys (Lee) Barbee shall be their entire interests in my said estate, as the said Lon Lee and Gladys (Lee) Barbee have heretofore received more from my estate than my other children, have received."

3. The proponents are John W. Lee, Jr., individually and as Independent Executor, Winifred C. Lee, Ethel Lee Lambert, Roy Lee and Kenneth Lee.

quaintances of testator, testified that he was of sound mind when he executed the will. This testimony is however, not conclusive on the issue of testamentary capacity. See In re Price's Estate, 375 S.W.2d 900 (Tex.Sup.1964). The jury chose not to believe the testimony of the attesting witnesses and returned a verdict of "unsound mind." In this context we are presented with but one question: was there any evidence of probative value that J. W. Lee, Sr., was mentally incapacitated on October 2, 1961, the day he executed his will. It is fundamental that in answering this question the Court "consider only the evidence which when viewed in its most favorable light, tends to support such a finding, and must disregard all evidence that would lead to a contrary conclusion." Lindley v. Lindley, 384 S.W.2d 676, 679 (Tex.Sup.1964); See In re King's Estate, 150 Tex. 662, 244 S.W. 2d 660 (1951).

The proper inquiry in a will contest on the ground of testamentary incapacity is the condition of the testator's mind on the day the will was executed. Since there is no direct testimony in the record of acts, demeanor or condition indicating that testator lacked testamentary capacity on October 2, 1961, testator's mental condition on that date may be determined from lay opinion testimony based upon the witnesses' observations of testator's conduct either prior or subsequent to the execution. Carr v. Radkey, 393 S.W.2d 806 (Tex.Sup. 1965); Cole v. Waite, 151 Tex. 175, 246 S.W.2d 849, 852 (1952) (Cancellation of a deed). However, only that evidence of incompetency at other times has probative force which demonstrates that that condition persists and "has some probability of being the same condition which obtained at the time of the wills making. * * *" 1 McCormick & Ray, Texas Law of Evidence § 896, at 675 (2d ed. 1956); Annot. 168 A.L.R. 969 (1947).

Considering the preceding rules and the admonition in *McCormick*, supra at 676, that "in all instances where the inadmissible shades into the admissible according to relative degrees of probative force * * * (the line is) one that no two men draw at exactly the same place * * *," we shall briefly review that evidence most favorable to contestants which we hold constitutes some evidence of probative force that testator lacked testamentary capacity when he executed the will. The testator was eighty-eight (88) years old when he executed the will and was suffering from arteriosclerosis and senile psychosis. His wife died in 1946, and from that time until June 1961, his daughter Gladys Lee Barbee, contestant here, lived in his house and took care of him. She was keeping house for the testator when she married and thereafter continued at his request to live in the house and care for him. In February 1960, testator and all of his children signed an instrument designating Mrs. Waunzita Simpson, testator's granddaughter, his attorney-in-fact. She had the function of transacting all of his business for him and was required to cosign all checks drawn by testator. Sometime in 1961, Mrs. Simpson demanded that Mrs. Barbee pay rent for the privilege of occupying the testator's house. Thereafter, Mrs. Barbee moved out, and testator went to live with Winifred Lee, one of the proponents.

There was testimony that a change took place in testator's condition beginning in 1959, that he was mentally blank and that his condition became gradually worse until his death in May, 1964. The testimony also indicated that he would sit on the bank of a tank on his farm and tell people that he was waiting for a headless woman to come out of the water. Testator's brother, C. R. Lee, testified that testator only one month prior to the execution of the will did not recognize him; and that he could only remember his children after they had been named to him, and that he would forget their identity shortly after they left his presence. There is also testimony that on

one occasion he inquired with whom he had been talking when in fact he had been visiting with his son, Lon Lee.

Charley Lee, son of contestant Lon, testified that his grandfather had not been of sound mind since he sold his store in 1956. As a predicate for this opinion, he related that often his grandfather could not recognize him and could not maintain one train of thought in a conversation. He also testified that on October 1, 1961, the day prior to the execution of the will, two of the proponents, John Lee, Jr. and Kenneth Lee had told him that "grandad don't know how to run his business" and "we are going to take it over from him." This testimony was admissible under the "declaration against interest" exception to the hearsay rule for such weight as the jury might give it on the issue of testamentary capacity. Woods v. Townsend, 144 Tex. 594, 192 S.W.2d 884 (1946).

Since the evidence indicated above constitutes more than a mere scintilla, the Court of Civil Appeals erred in rendering judgment for the proponents. However, since that court alternatively held that the jury's verdict was contrary to the great weight and preponderance of the evidence and since such holding is solely within the jurisdiction of that court, the judgment of the Court of Civil Appeals reversing the trial court's judgment is affirmed; their judgment of rendition is reversed and the cause is remanded for a new trial.

In the event that this case is retried the issue to be submitted is whether the testator lacked "testamentary capacity" on the date of executing the will, not whether he was of "unsound mind." Likewise, should the court below on retrial determine that lack of testamentary capacity is not shown, it should render judgment that contestants take nothing, rather than rendering judgment admitting the will to probate as this is a suit to set aside the probate of a will already admitted to probate.