*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★                         ★ ★ ★



# MEMORANDUM OPINION ON REHEARING

No. 04-07-00667-CV

**IN RE ESTATE OF** Ella V. **MASK**, Deceased

From the County Court, Uvalde County, Texas
Trial Court No. 6352-06
Honorable William T. McGee, Judge Presiding[1]

Opinion by:    Alma L. López, Chief Justice

Sitting:        Alma L. López, Chief Justice
                Phylis J. Speedlin, Justice
                Steven C. Hilbig, Justice

Delivered and Filed:   October 15, 2008

APPELLANT'S MOTION FOR REHEARING GRANTED; AFFIRMED IN PART AND
REVERSED AND REMANDED IN PART; AND APPELLEE'S MOTION FOR SANCTIONS
DENIED

Appellants, the non-beneficiary grandchildren of the deceased, appeal the summary judgment

granted in favor of appellee, proponent of the deceased's will, contending the probate court erred by:

(1) granting appellee's summary judgment; (2) making erroneous evidentiary rulings; (3) denying

appellant's second motion for continuance; and (4) probating the will and approving the final

accounting. In an opinion and judgment dated July 23, 2008, we affirmed the probate court's final

judgment and its orders probating the will and approving the final accounting. We denied appellee's

motion for sanctions. One of the appellants, Ronnie L. Rogers, pro se, filed a motion for rehearing.

---

[1] Sitting by assignment. TEX. PROB. CODE ANN. § 5(b)(1) (Vernon Supp. 2007); TEX. GOV'T CODE ANN.
§ 25.0022 (Vernon Supp. 2007).

We grant the motion for rehearing, withdraw our opinion and judgment of July 23, 2008, and issue this opinion and judgment in its place. We affirm the summary judgment and order probating the will and codicil and issuing letters testamentary, reverse the order approving the final accounting, and deny appellee's motion for sanctions. We remand the cause for further proceedings consistent with this opinion.

## BACKGROUND

Ronnie L. and Jimmy W. Rogers ("Ronnie and Jimmy"), appellants, are the grandsons of Ella V. Mask ("Ella"). During the final year of Ella's life, Ronnie and Jimmy petitioned for guardianship of Ella on January 23, February 16, and April 17, 2006. Ronnie and Jimmy were ultimately denied guardianship. Ella was hospitalized in April and executed a will on April 14, 2006, the day she was released from the hospital. Much of Ronnie and Jimmy's concern for Ella centered around contracts for the sale of Ella's real property, which they considered to be under-priced. Using a power of attorney which had been revoked by Ella during the time of the guardianship hearings, Ronnie and Jimmy deeded Ella's real property to a trust under which they were trustees of the property. On November 3, 2006, Ella testified at a hearing to remove the cloud of title on her property and also executed a codicil to the April 14, 2006 will. Ella was killed in a car accident on December 13, 2006 when she was 90 years of age.

After Ella's death, T.W. Mask ("Mask"), Ella's only surviving child and alternate executor of her estate, filed Ella's April 14, 2006 will and November 3, 2006 codicil for probate in the county court. Ronnie and Jimmy filed a will contest on December 27, 2006[2] and requested that the

---

[2] Ronnie and Jimmy's Statement of Facts claims they filed the will contest on December 20, 2006; however, their will contest petition is date-stamped December 27, 2006.

contested matter be assigned to a statutory probate judge. The contested matter was assigned to a statutory probate judge, the Honorable William T. McGee, on January 24, 2007.

Mask moved for both a traditional and no-evidence summary judgment on February 9, 2007. Ronnie and Jimmy's first motion for a 90-day continuance was granted on February 28, 2007. At the end of the 90-day continuance, a summary judgment hearing was held on May 31, 2007. During the hearing, Judge McGee granted the proponent and the contestants seven additional days to submit summary judgment proof. On July 6, 2007, Judge McGee granted Mask's summary judgment and denied Ronnie and Jimmy's post-hearing motion for continuance. Judge McGee signed a final order disposing of all claims on August 23, 2007, and he admitted the will to probate and approved a final accounting on August 28, 2007. A few days later, he signed an order admitting the will and codicil to probate and an order approving a final accounting. Ronnie and Jimmy appeal.

### EVIDENTIARY RULINGS

We first address Ronnie and Jimmy's second issue. Ronnie and Jimmy contend the probate court erred, by overruling their objections to Mask's summary judgment evidence and sustaining Mask's objections to their summary judgment evidence. We review a trial court's evidentiary rulings for an abuse of discretion. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). A trial court abuses its discretion when it acts without regard for any guiding rules or principles. *Id.* We must uphold a trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Id.*

Because Mask's motion for summary judgment sought "summary judgment overruling all grounds of contest of the Will and Codicil" and asserted that "the Will and the Codicil were executed with the formalities required by law" and with Ella's full understanding and free will, entitling them

to admission to probate, Mask pled the proper execution of the codicil as a ground for summary judgment. The codicil dated November 3, 2006 expressed Ella's desire to "ratify and confirm" all of the other provisions of her will dated April 14, 2006. This provision of the codicil "inseparably connected" the codicil to the will and effectively "republished" Ella's will. *See Aven v. Green*, 159 Tex. 361, 320 S.W.2d 660, 662 (1959). Because Jimmy and Ronnie challenged both the will and the codicil, and in this case the proper execution of the codicil effectively republished the associated will, we will limit our review to the evidence surrounding the execution of the codicil. *See Aven*, 320 S.W.2d at 662. If the properly admitted evidence is sufficient to prove the proper execution of the codicil without raising a fact issue, we need not review the trial court's rulings regarding evidence surrounding the execution of the will. *See id.*; *see also Hinson v. Hinson*, 154 Tex. 561, 280 S.W.2d 731, 735 (1955).

## A.      Mask's Video-Recorded DVD Evidence

Mask presented a DVD containing a video-recorded session during which Ella executed her November 3, 2006 codicil. According to Ronnie and Jimmy, Mask failed to properly authenticate the DVD in accordance with the Texas Rules of Evidence. We disagree.

A video recording is considered a photograph under Texas Rule of Evidence 1001. TEX. R. EVID. 1001(2). Prior to admission into evidence, Texas Rule of Evidence 901 requires the authentication or identification of a video recording to establish it is what it is claimed to be. TEX. R. EVID. 901. Proffered evidence may be authenticated by the testimony of a knowledgeable witness that an item is what it is purported to be. *Id.* Consequently, a video recording may be authenticated by testimony that the recording is a fair and accurate representation of the event by a knowledgeable witness. *See Davidson v. Great Nat'l Life Ins. Co.*, 737 S.W.2d 312, 314-15 (Tex. 1987). Attorney

William Kessler, who video-taped the session, authenticated the DVD in his affidavit. *See id.* Kessler states that it is true and correct and identifies himself as one of the speakers.[3] *See id.* In the recording, Ella is lucid and articulate; she states she arrived at the ceremony by driving herself; she identifies the real estate she owns; she verifies her last will and identifies the witnesses to the will; she states her desire to change the will with a codicil; she acknowledges she has read and understands the codicil;[4] she asks the witnesses (also identified on the DVD) to attest to the codicil; she states the codicil reflects her desires and no one is pressuring her to sign the codicil; she states no one pressured her to sign her will; she willingly signs the codicil; and she declares that the signing of the codicil is her free act and deed, rendering the DVD relevant to the will contest. TEX. R. EVID. 104. Because the DVD was authenticated and is relevant to the will contest, we conclude the probate judge did not abuse his discretion in overruling Ronnie and Jimmy's objections to the DVD. *Owens-Corning Fiberglas Corp.*, 972 S.W.2d at 43.

**B.      Mask's Affidavit Evidence**

Ronnie and Jimmy raise objections to every affidavit filed in support of Masks's motion for summary judgment claiming the affidavits to be unreliable, irrelevant, inaccurate, conclusory, and contradictory. We will address each argument in turn.

---

[3] Although the DVD was inadvertently mislabeled, this has no bearing on its proper authentication.

[4] Ronnie and Jimmy claim the video recording of the codicil ceremony is improper evidence because Ella's statements "about what she was doing are inconsistent with the codicil itself. She does not go over the terms of the codicil, or her will . . . on the video and therefore the probative value is low." Texas law does not require the will to be read to the testatrix in the presence of the subscribing witnesses. *Wilson v. Paulus*, 30 S.W.2d 573, 576 (Tex. Civ. App.—Galveston 1930, writ ref'd). Moreover, Ella states on the video that she read the codicil and it reflects her testamentary desires. *See id.*

**I.**

Ronnie and Jimmy contend attorney Kessler's affidavit "refers to documents not attached, and violates the rule precluding attorneys from appearing as witnesses in cases in which they are also counsel." *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 2005). Disciplinary rule 3.08 prohibits an attorney from appearing both as a witness and as counsel unless the attorney is a party to the action and is appearing pro se. *See id.* In a will contest, the rule is well established that "an attorney for the proponents . . . is not rendered incompetent to testify, especially if he drafted the will in question and if he has not been employed upon a contingent fee." *In re Hardwick's Estate*, 278 S.W.2d 258, 262 (Tex. Civ. App.—Amarillo 1954, writ ref'd n.r.e.); *see, e.g.*, *Wilkinson v. Moore*, 623 S.W.2d 662, 664 (Tex. Civ. App.—Houston [1st Dist.] 1981, no writ) (discussing attorney's properly admitted testimony regarding his preparation of decedent's will and its execution). According to the record, Kessler offered the will and codicil for probate but did not appear as attorney of record for Mask in the will contest and was not prohibited from testifying. *See Aghili v. Banks*, 63 S.W.3d 812, 818 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). Although Kessler observed both the signing of the will and the codicil, "each was also witnessed by two other witnesses who . . . testified." *See In re Hardwick's Estate*, 278 S.W.2d at 262. Consequently, Kessler's affidavit did not provide "the controlling testimony for the client's case [and did not blur] the necessary distinction between advocate and witness on which our adversary system depends." *Aghili*, 63 S.W.3d at 818 (quoting *Anderson Producing Inc. v. Koch Oil Co.*, 929 S.W.2d 416, 426 (Tex. 1996) (Phillips, C.J., joined by Spector, J., dissenting)). Finally, Kessler specifically referenced six documents in his affidavit. At most, four of the six documents concern the contested matter, and all four were properly served

with the summary judgment motion. TEX. R. CIV. P. 166a(c), (f); *Wilson v. Burford*, 904 S.W.2d 628, 629 (Tex. 1995); *Gensheimer v. Kneisley*, 778 S.W.2d 138, 140 (Tex. App.—Texarkana 1989, no writ).

**II.**

Ronnie and Jimmy challenge the affidavits of Dr. Jamil Bitar, Dr. Laura Perches, and Dr. Lewis Christian as being unreliable, unqualified, inaccurate, contradictory, and conclusory. Ronnie and Jimmy further contend that the bases of the doctors' opinions are unreliable because the probate court did not apply the *Robinson* factors for scientific evidence in determining the admissibility of the opinions. *See E.I. du Pont de Nemours and Co., Inc. v. Robinson*, 923 S.W.2d 549, 556-57 (Tex. 1995). First, we note that all three doctors testified in large part to Ella's mental soundness, which is not a subject that "must be guided solely by the opinion . . . of experts." *See* TEX. R. CIV. P. 166a(c); *FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 89-90 (Tex. 2004) ("The determination [of] whether expert testimony is necessary is not an admissibility of evidence question, which admittedly would be reviewed under an abuse of discretion standard, but a question of what legal weight should be given to the non-expert evidence in the record. This is a question of law."). In will contests, mental soundness is within the common knowledge of lay persons and does not require proof by expert testimony. *Storey v. Hayes*, 448 S.W.2d 179, 181-82 (Tex. Civ. App.—San Antonio 1969, writ dism'd) (citing *Brown v. Mitchell*, 88 Tex. 350, 31 S.W. 621 (1895)); *Payne v. Chance*, 4 S.W.2d 328, 329 (Tex. App.—Amarillo 1928, no writ). The record indicates each doctor's affidavit established sufficient personal knowledge of and interaction with Ella upon which to base their conclusions. *See* TEX. R. CIV. P. 166a(f). For example, Dr. Bitar was Ella's physician and an attesting witness to Ella's execution of the will. Dr. Bitar's observations of and conclusion

regarding Ella's soundness of mind in January and April of 2006 "is not and does not purport to be scientific testimony." *See Wal-Mart Stores, Inc. v. Garcia*, 974 S.W.2d 83, 86 (Tex. App.—San Antonio 1998, no pet.). Because each doctor's testimony regarding Ella's soundness of mind during 2006 was not scientific testimony, "the factors set forth in *Robinson* to be considered in the admissibility of scientific testimony are not relevant to our discussion." *See id.* at 87.

Second, although Ronnie and Jimmy attack several aspects of each doctor's statements as contradictory to their depositions, the alleged contradictions are either contrived or are not material to this case. Furthermore, because all three doctor's opinions were based on their interactions with and observations of Ella prior to the November 3, 2006 codicil execution date, and there is video, testimonial, and affidavit evidence of Ella's mental soundness on November 3, 2006, the doctors' opinions are not controlling with regards to Ella's mental soundness on the day she executed the codicil. *See Lee v. Lee*, 424 S.W.2d 609, 611 (Tex. 1968) (stating that in addition to evidence of a testatrix's capacity at the time she executed a testament, evidence of a testatrix's capacity prior or subsequent to the execution of the testament may be considered only if "that evidence of incompetency at other times has probative force which demonstrates that that condition persists and has some probability of being the same condition which obtained at the time of the wills [sic] making." *See id.* (internal quotes omitted). Additionally, *immaterial* differences between affidavits and depositions do not warrant the exclusion of the affidavits. *Tag Res., Inc. v. Petroleum Well Servs., Inc.*, 791 S.W.2d 600, 603-04, Tex. App.—Beaumont 1990, no writ) (holding that "[t]he conflicting statements made by appellant's representative were neither relevant nor material to" the crux of the suit, and none of the "alleged summary judgment evidence of appellant, controverted the terms or existence of the subsequent agreement," which was the subject matter of the suit); *cf. Saenz*

*v. Gonzalez*, 94 S.W.3d 659, 663-64 (Tex. App.—San Antonio 2002, pet. denied) (concluding that even "differences [that] fall into the category of variations on a theme, consistent in the major allegations but with some variances of detail" must be considered grounds for impeachment). Ronnie and Jimmy state Dr. Bitar's testimony, regarding the length of time Ella was deprived of oxygen on April 7, 2006 and whether she was in pain on April 14, 2006, contradicts the medical records. Neither issue undermines Dr. Bitar's opinion of Ella's mental soundness at the time she executed her codicil. To impeach Dr. Perches's credibility, Ronnie and Jimmy emphasize that Dr. Perches's affidavit listed her employment as being in private practice even though she stated during her deposition that she was the director of a drug treatment center. They also point out that she failed to specifically list performing hair transplants while completing her psychiatric residency. We fail to find these "differences" are contradictory or that they undermine the doctors' testimony regarding Ella's mental soundness. *See Tag Res., Inc.*, 791 S.W.2d at 603-04.

### III.

Ronnie and Jimmy challenge the affidavits of the lay witnesses to the codicil as factually unsupported and conclusory. Ronnie and Jimmy contend that the witnesses to the codicil were "no more than . . . mere acquaintance[s]." Although sworn affidavits based solely upon "best knowledge and belief are insufficient" summary judgment evidence, *Lightfoot v. Weissgarber*, 763 S.W.2d 624, 628 (Tex. App.—San Antonio 1989, writ denied), affidavits based on personal knowledge through the observation of and involvement with a testatrix may be sufficient to support mental capacity. TEX. R. CIV. P. 166a(f); *see also Jackson T. Fulgham Co., Inc. v. Stewart Title Guar. Co.*, 649 S.W.2d 128, 129 (Tex. App.—Dallas 1983, writ ref'd n.r.e.). Furthermore, a lay witness need not detail the facts upon which she bases her opinion of sound mind. *Singleton v. Carmichael*, 305

S.W.2d 379, 383 (Tex. Civ. App.—Houston 1957, writ ref'd n.r.e.). The witnesses to the codicil stated that they were in the room with Ella when she signed the codicil. This unchallenged statement is sufficient to show how each person knew of the facts they attested to. *See Jackson T. Fulgham Co., Inc.*, 649 S.W.2d at 129. The witnesses also attested to the solemnities of the codicil ceremony. They each heard Ella declare that the instrument was the codicil to her last will and testament, and that she willingly made and executed it as her free act and deed. They each accepted Ella's request to sign the codicil in attestation, and their affidavits were not contradictory to the other evidence presented regarding the November 3, 2006 codicil. *See id.* Even if the attesting witnesses did not frequently visit with Ella, their presence at the signing ceremony and brief conversations with Ella before or after witnessing the codicil are "sufficient to qualify the attesting witness[es] to give [their] opinion as to the sanity of the testator." *See Reynolds v. Park*, 485 S.W.2d 807, 811 (Tex. Civ. App.—Amarillo 1972, writ ref'd n.r.e.) (citing *Mueller v. Banks*, 273 S.W.2d 88, 89 & n.1 (Tex. Civ. App.—San Antonio 1954, writ ref'd n.r.e.)).

**IV.**

Ronnie and Jimmy further object to the affidavit of Ed Alexander, Ella's former minister and realtor associated with Ella's pending real estate transaction. Ronnie and Jimmy claim Alexander is an interested witness because he was the listing broker for the sale of Ella's real property. Because this is a will contest, the pertinent question is whether Alexander is an interested witness as defined in that context. *Logan v. Thomason*, 146 Tex. 37, 202 S.W.2d 212, 215-17 (1947). An interested party to a will is one who "has some legally ascertained pecuniary interest, real or prospective, absolute or contingent, which will be impaired or benefited, or in some manner materially affected, by the probate of the will." *Id.* at 215-16. Assuming, without deciding, that Alexander is an

interested witness as described in Rule of Procedure 166a(c) in the context of this will contest, his affidavit was admissible if the evidence was "clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." TEX. R. CIV. P. 166a(c). Alexander provided a detailed basis for his relationship with Ella and his evaluation of her mental soundness. Ronnie and Jimmy offer no contradicting evidence of Alexander's relationship with Ella, but rather support Alexander's evidence by claiming that Alexander had frequent meetings with Ella—albeit to exert alleged "undue influence on Ella . . . as they were attempting to insure [sic] the sale of her real property." We conclude the probate court properly considered Alexander's affidavit.

## V.

Ronnie and Jimmy challenge the affidavit of Mask due to Mask's lack of personal knowledge and contradictions between his affidavit and deposition. Ronnie and Jimmy contend:

> The affidavit of T.W. Mask is directly contradicted by his deposition testimony. He admits he has no personal knowledge of the will execution and that he only saw Ella . . . three times in three or five years. He admits she did not discuss his [sic] personal affairs with him. His affidavit is full of contradicted statements made without personal knowledge.

It appears from the record that Mask's personal knowledge of Ella's final year is based upon telephone conversations and two personal visits with Ella. Mask testified during his deposition that Ella was not "forthcoming . . . with regard to her business affairs" and "never said much about business" but further stated that Ella would make "comments about it was a slow weekend or a busy weekend" at her camp facility. When asked whether Mask thought Ella "was in some sort of danger" at the hands of her granddaughter, Mask testified that Ella "said she was not" and "told me that, that was not what happened, and I believe my mother." Mask's testimony does not contradict

his affidavit. Additionally, Mask's affidavit correctly states that Ella appointed him attorney-in-fact, guardian in the event of later need, medical power of attorney, and alternate executor of Ella's will. These facts are based on his personal review of the documents and were not based on Mask's observation of the execution of the documents.

## VI.

Ronnie and Jimmy also oppose the affidavits of Ella's friends: Norma Gayle, Thomas Rochhio, and Richard Hernandez as irrelevant, unreliable, contradicted, and controverted. Our review of the record indicates each affiant established a proper basis for his or her observations and their associated conclusions regarding Ella's testamentary capacity and susceptibility to undue influence. Each of these friends had numerous and recent opportunities to observe Ella and had extended conversations with her. During their visits, they observed Ella's memory recall and her ability to communicate lucidly and knowlegdably on a host of subjects. *See Singleton*, 305 S.W.2d at 383.

## C.    Ronnie and Jimmy's Excluded Evidence

Ronnie and Jimmy claim the probate court erroneously sustained Mask's objections to their summary judgment evidence. In particular, the affidavits of Ella's cousin and her husband, the Kites, were excluded as conclusory. After describing a building loan that the Kites provided to Ella so that Ella's granddaughter, Robby Rogers, could build cabins which were never built, the Kites each concluded that "[i]t became apparent that Robby Rogers was controlling Ella." Neither provided a factual basis for their conclusions and both summarized "it is my opinion that Ella . . . was unable to understand what was going on. Robby Rogers was controlling Ella [and she] was vulnerable and able to be controlled." Moreover, there was no evidence presented that Robby Rogers, who is not

a beneficiary under Ella's will and codicil, had anything to do with the execution of Ella's will or codicil.

Next, the probate court excluded the affidavits of Ronnie and Jimmy as self-serving and conclusory. Because Ronnie and Jimmy submitted two sets of affidavits, we will address the May 24, 2007 affidavits first. Ronnie and Jimmy stated that Ella and Mask were not close and because of that "[t]here is no way Ella . . . would have made [Mask] her substitute executor." Although self-serving affidavits are not necessarily improper summary judgment evidence, *Trico Techs. Corp. v. Montiel*, 949 S.W.2d 308, 310 (Tex. 1997), they must contain statements that may be confirmed or denied by independent evidence. *Casso v. Brand*, 776 S.W.2d 551, 558 (Tex. 1989). Ronnie and Jimmy's statements are based on their perceptions and could not be easily controverted. Furthermore, Ronnie and Jimmy offer no statements by Ella to support their conclusions. Ronnie and Jimmy also stated that Ella's will power was being overpowered "first by Robby Rogers and then by [Kessler, James Drought, Alexander, and Joe Meyer]." Again, there was no evidence presented that Robby Rogers had anything to do with the execution of Ella's will or codicil. Kessler and James Drought were Ella's attorneys, Alexander was Ella's minister and real estate broker, and Joe Meyer was the prospective buyer of Ella's real property. Ronnie and Jimmy presented no evidence that either Alexander or Meyer had anything to do with Ella's will or codicil. Although Kessler drafted Ella's will and Drought handled a pending real estate agreement, neither are beneficiaries under the will or codicil, and Ronnie and Jimmy provided no factual evidence that Ella's will or codicil was a result of improper influence by Kessler or Drought.

The probate court also excluded the June 7, 2007 affidavits of Ronnie and Jimmy. In these affidavits, Ronnie and Jimmy stated facts suggesting their sister, Robby Rogers, was abusive but they

failed to connect her abusiveness to the will or codicil. They concluded that, because Ella did not want Mask to be involved in her daily affairs, "[n]aming T.W. Mask her executor is not something she would naturally have done." Ronnie and Jimmy failed to explain why Mask was named substitute executor in Ella's will. They further accused Drought and Kessler of telling Ella that Ronnie and Jimmy had stolen Ella's land and were trying to control Ella. Ronnie and Jimmy stated that, at the November 3, 2006 hearing, Ella "did not remember many things that happened recently . . . [and] was confused and sometimes answered questions with answers that made no sense;" however, they failed to provide the details supporting their conclusions by specifying what Ella failed to remember and what she was confused about. Finally, Ronnie and Jimmy each concluded "[f]rom my recent personal contacts with her and my knowledge of her for many years, my grandmother, Ella . . . was too frail and weak both physically and mentally to be able to resist influences on her during the last year of her life." Because Ronnie and Jimmy failed to connect their allegations to their conclusions, and their conclusions were based on incontrovertible perceptions, the probate court did not abuse its discretion by excluding Ronnie and Jimmy's affidavits as self-serving and conclusory.

The probate court also excluded several exhibits presented by Ronnie and Jimmy on the basis of irrelevancy, immateriality, lack of certification, and/or hearsay. It is within the trial judge's discretion to determine whether a piece of evidence is relevant, based on hearsay, or whether it is properly certified. TEX. R. EVID. 104(a); *State v. Bristol Hotel Asset Co.*, 65 S.W.3d 638, 647 (Tex. 2001). The excluded evidence includes: the petition from an unrelated suit against Dr. Perches; an advertisement for Dr. Perches's services; Robby Rogers's indictment for misappropriation and elder abuse; a notary receipt from a boundary line agreement; Ella's medical records from September

2005; a December 2005 letter regarding the limits of Robby Rogers's power of attorney; sheriff's department witness statements from January 2006 regarding Robby Rogers's abuse of Ella; a court order granting Ella's guardian ad litem's motion for an independent mental examination; a title company letter regarding payments due to a land surveyor; a November 2005 police report regarding Ella becoming confused; and an April 2006 appraisal letter for Ella's property. Our review of the record indicates the probate court applied appropriate evidentiary rules and did not err in excluding the affidavits or exhibits from summary judgment evidence. *State*, 65 S.W.3d at 647.

In summary, we will not consider Ronnie and Jimmy's properly excluded evidence in our review of the probate court's grant of Mask's motion for summary judgment.

### SUMMARY JUDGMENT

We review a trial court's decision to grant summary judgment de novo. *Valores Corporativos, S.A. de C.V. v. McLane Co.*, 945 S.W.2d 160, 162 (Tex. App.—San Antonio 1997, writ denied). "The trial court's duty is to determine if any genuine issues of material fact remain, not to weigh the evidence or determine its credibility." *In re Estate of Garcia*, No. 04-06-00121-CV, 2007 WL 1423873, at *1 (Tex. App.—San Antonio May 16, 2007, no pet.) (mem. op.) (citing *Cummins v. Travis County Water Control & Improvement Dist. No. 17*, 175 S.W.3d 34, 53 (Tex. App.—Austin 2005, pet. denied)). When the trial court does not state the grounds upon which it granted summary judgment and, as here, several grounds are provided, the reviewing court must affirm the summary judgment if any ground would support the judgment. *Moritz v. Bueche*, 980 S.W.2d 849, 852-53 (Tex. App.—San Antonio 1998, no pet.); *see also Proctor v. White*, 155 S.W.3d 438, 441 (Tex. App.—El Paso 2004, pet. denied).

A traditional summary judgment requires the movant to establish that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). The movant has the burden to conclusively disprove one element of the challenged cause of action or to conclusively prove all of the elements of an affirmative defense. *Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex. 1993). Evidence favorable to the non-movant will be taken as true, and every reasonable inference and any doubts will be resolved in the non-movant's favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). This means a matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 814 (Tex. 2005).

### A.      Insufficient Motion for Summary Judgment

Ronnie and Jimmy claim that Mask's motion for traditional summary judgment failed to meet the pleading requirements of the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 166a(c), 166a(i). Ronnie and Jimmy argue "Appellee failed to state with specificity the elements conclusively negated" under traditional summary judgment. "The mere conclusory statements of the witnesses and notary to the will, whose statements were not otherwise free from contradiction, do not meet the burden." Mask's traditional motion for summary judgment stated, in general, that "*each and every ground* of contest of the Will by contestants is conclusively negated by [attached] summary judgment evidence." Mask then individually addressed: (1) formalities required by law; (2) mental capacity; (3) undue influence; (4) fraud; and (5) mistake. We conclude Mask's traditional summary judgment

pleadings are sufficient to meet Ronnie and Jimmy's causes of action as pled. *See SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 354-55 (Tex. 1995).[5]

## B.     Lack of Formalities

Ronnie and Jimmy make a vague argument that the will execution ceremony lacked the requisite formalities. Nevertheless, the codicil dated November 3, 2006 expressed Ella's desire to "ratify and confirm" all of the other provisions of her will dated April 14, 2006. This provision of the codicil effectively "republished" Ella's will. *See Aven*, 320 S.W.2d at 662. Because a properly executed codicil republishes the prior "connected" but improperly executed will, we will briefly address the solemnities of the codicil ceremony. *See Hinson*, 280 S.W.2d at 735. A testament with a self-proving affidavit is prima facie evidence that the proper formalities were followed. *Bracewell v. Bracewell*, 20 S.W.3d 14, 26 (Tex. App.—Houston [14th Dist.] 2000, no pet.). The codicil to Ella's will contained a self-proving affidavit. Because the codicil was not yet admitted to probate, however, Mask retained the burden of proving compliance with the requisite formalities. *See id.* at 25-26. The codicil execution ceremony was video-recorded, and Mask's evidence clearly demonstrated the ceremony contained all of the necessary elements of a formal execution ceremony. *See* TEX. PROB. CODE ANN. § 59 (Vernon 2003). The non-beneficiary witnesses, both of whom were over fourteen years of age: (1) observed Kessler discuss the contents of the codicil with Ella; (2) observed Ella was over eighteen years of age and of sound mind; (3) heard Ella ask both witnesses to attest to her execution of her codicil; (4) observed Ella sign the codicil which Ella declared was executed as her free act and deed; and (5) signed the codicil in the presence of Ella and of each other.

---

[5] ▲ Ronnie and Jimmy also challenge Mask's no-evidence motion for summary judgment as insufficient. Because we dispose of the issues based on Mask's traditional motion for summary judgment, we do not reach this issue.

*See id.* Moreover, Ronnie and Jimmy presented no evidence that the codicil ceremony did not comply with formalities. *See Bracewell*, 20 S.W.3d at 26.

## C.    Lack of Testamentary Capacity

A testatrix must be of "sound mind," which means having testamentary capacity, at the time the testatrix executes a will. TEX. PROB. CODE ANN. § 57 (Vernon 2003); *Chambers v. Chambers*, 542 S.W.2d 901, 906 (Tex. Civ. App.—Dallas 1976, no writ). The testatrix must possess sufficient mental soundness to: (1) understand the business in which the testatrix is engaged, the effect of making the will, and the general nature and extent of her property; (2) know the testatrix's next of kin and the natural objects of her bounty; and (3) have sufficient memory to assimilate the elements of the business to be transacted, to hold these elements long enough to perceive their obvious relation to each other, and to form a reasonable judgment as to them. *Jones v. LaFargue*, 758 S.W.2d 320, 325 (Tex. App.—Houston [14th Dist.] 1988, writ denied). The burden of proving the testatrix's testamentary capacity is on the proponent of the will. *Croucher v. Croucher*, 660 S.W.2d 55, 57 (Tex. 1983). Although a self-proving will may be admitted to probate by affidavit, without the testimony of subscribing witnesses, the burden of proof regarding the testatrix's testamentary capacity remains on the proponent when a contest is filed before the will is admitted to probate. *Id.*

In a will contest, proof of mental soundness may be established either by lay or expert witnesses. *Storey*, 448 S.W.2d at 181-82. Either type of witness may answer "whether the testator knew or had the capacity to know the objects of his bounty, the nature of the transaction in which he was engaged, the nature and extent of his estate, and similar questions," provided the witness has personal knowledge or is a proper expert. *Id.* Personal knowledge is based on observing the testator near the time of the execution of the will under such circumstances that a conclusion could be drawn.

*Reynolds*, 485 S.W.2d at 811. "[E]ven a conversation with the testator ten minutes prior to the execution of the will has been held sufficient to qualify the attesting witness to give his opinion as to the sanity of the testator." *Id.* (citing *Mueller*, 273 S.W.2d at 89 & n.1). A lay witness need not detail the facts upon which she bases her opinion, unless she expresses the opinion that the testator was of unsound mind. *Singleton*, 305 S.W.2d at 383.

## I.

Here, Mask was required to prove Ella had testamentary capacity when she executed the November 2006 codicil. Due to recent guardianship proceedings, Ella's soundness of mind and ability to manage her own affairs had been recently and vigorously challenged. Consequently, Mask's summary judgment evidence consisted of over forty exhibits consisting of affidavits, video recordings of Ella reaffirming her will and executing her codicil, Ella's own court testimony, and her medical records. The probate judge ruled that the evidence proved Ella's competency and overruled Ronnie and Jimmy's evidentiary challenges.

First, Mask presented a video recording of Ella executing her codicil. Ella appeared healthy, lucid, and articulate. In the video, Ella stated that she had driven herself to attorney Kessler's office in Uvalde from her residence in Concan. She accurately answered questions regarding the circumstances of the meeting and her testamentary desires.

Next, Mask produced thirteen different affidavits attesting to Ella's sound mind. Besides the affidavits provided by the witnesses of her codicil, there were five affidavits provided by Ella's doctors, friends, and minister who visited with Ella many times before and after the signing of her will and codicil. Ella's attorney and those who witnessed Ella's execution of the codicil, each swore that Ella declared she was signing the codicil to her last will and testament, and that she willingly

made and executed the instrument of her own free will. The attesting witnesses further avowed that, based on their personal observations, Ella was of sound mind and had sufficient mind and memory to understand the nature and consequences of making her codicil at the time of execution. The other five affiants swore that, based on their personal observations of and discussions with Ella, she was independent; demonstrated good memory; was knowledgeable of her medical condition; was aware of local, state, and national news; knew her son, grandchildren, and great grandchildren; and understood the nature and consequences of her acts and the business she was transacting with Meyer, who was purchasing her property. Mask also presented Ella's own testimony from the guardianship proceedings, as well as the cloud of title proceeding on November 3, 2006. Mask's comprehensive summary judgment evidence proved the elements of testamentary capacity.

## II.

Once Mask established his right to summary judgment, the burden shifted to Ronnie and Jimmy to present evidence raising a fact issue. *United Bus. Machs. v. Entm't Mktg., Inc.*, 792 S.W.2d 262, 264 (Tex. App.—Houston [1st Dist.] 1990, no pet.). Ronnie and Jimmy presented summary judgment evidence consisting of ten affidavits, nine depositions, and numerous documents. After the hearing on the motion for summary judgment, the probate judge sustained Mask's objections to the affidavits of the Kites and Ronnie and Jimmy; evidence against Dr. Perches; medical records from 2005; and other miscellaneous evidence. Ronnie and Jimmy claim their summary judgment evidence contradicted the evidence presented by Mask and raised fact issues. Because we previously concluded that the probate judge correctly sustained Mask's objections to Ronnie and Jimmy's summary judgment evidence, we will not consider the excluded evidence in our analysis.

To rebut Mask's evidence, Ronnie and Jimmy submitted the affidavit of Dr. Michael Arambula to provide medical evidence that Ella lacked testamentary capacity on April 14, 2006. Dr. Arambula's affidavit presents no evidence, however, that Ella lacked testamentary capacity on November 3, 2006, the date the codicil was executed. Because a properly executed codicil republishes the prior "connected" will, *see Hinson*, 280 S.W.2d at 735, we need only consider Dr. Arambula's affidavit if Ella's condition persisted six months later when Ella executed her codicil. *Lee*, 424 S.W.2d at 611. Dr. Arambula based his medical opinion on a review of Ella's hospital and pharmacy records "during the relevant time period." Without personal observation or examination, Dr. Arambula concluded Ella was "suffering from symptoms of withdrawal from alprazolam on April 14, 2006 " as evidenced by her "delirium" on April 12, 2006 when she thought she was in a church. Even though Ella was given a dose of alprazolam on April 13, 2006, Dr. Arambula opined that the medical records indicated she continued to suffer from withdrawal through the night of April 13, 2006. Evidence of drug use is insufficient to establish a lack of testamentary capacity without evidence illustrating that it affected Ella's testamentary capacity. *See Horton v. Horton*, 965 S.W.2d 78, 86 (Tex. App.—Fort Worth 1998, no pet.). Although the medical records indicated Ella was in pain caused by the bruising to her torso a few days earlier, there is no indication that Ella was delirious, confused, or unable to make her own medical decisions on April 13 or April 14, 2006. The medical records, recorded by Ella's attending nurses, indicated that Ella's health began to improve on the afternoon of April 13 and progressed through the evening with Ella stating she had no pain and wanted to go home. The medical records establish no evidence of Ella exhibiting confusion or anxiety on April 13 or 14. Furthermore, eye witnesses stated that Ella was lucid, alert, and communicative on April 14, 2006 when she executed her will. Dr. Arambula's affidavit creates no

more than a mere surmise or suspicion that Ella lacked testamentary capacity on the afternoon of April 14, 2006 and does not report a condition which probably persisted on November 3, 2006. Dr. Arambula also disagreed with Dr. Perches's characterization of the Folstein Mini Mental Status Exam as a diagnostic test and rather characterized the exam as a screening test. Dr. Arambula provided no basis for this opinion. Given Mask's summary judgment evidence for November 3, 2006 from witnesses who observed Ella at the time she executed her codicil, the difference between Dr. Perches's and Dr. Arambula's characterization of the Folstein Mini Mental Status Exam administered on April 25, 2006 does not create a fact issue regarding Ella's mental capacity on November 3, 2006.

Ronnie and Jimmy claim that the affidavit of Ella's friend, Ann Watkins, based on her visit to Ella on April 12, 2006, raises a fact question regarding Ella's testamentary capacity on April 14, 2006. Even if Ella was "confused and dazed to the extent that she could not have transacted any business or made any decisions with reason" on April 12, 2006 after suffering heart failure, this condition did not probably persist on November 3, 2006. *Lee*, 424 S.W.2d at 611. Moreover, evidence that Ella was old, sick, and weak does not infer a lack of testamentary capacity. *See Price v. Johnston*, 352 S.W.2d 864, 865 (Tex. Civ. App.—San Antonio 1961, writ dism'd).

Ronnie and Jimmy attempt to discredit the affidavits of Linda Weaver, witness to the will, and Barbara Dillahunty, notary to the will. Because the proper execution of the codicil is controlling, we need not address this point regarding the execution of the will. *See Hinson*, 280 S.W.2d at 735.

Ronnie and Jimmy also presented the affidavit of Ella's daughter-in-law, Patricia Mask. Patricia lived with Ella from January 26, 2006 through June 11, 2006. We need only consider Patricia's affidavit if Ella's mental condition probably persisted six months later when Ella executed

her codicil. *Lee*, 424 S.W.2d at 611. Although Patricia was not present when Ella executed her will or codicil, most of Patricia's opinions are based on the time frame around the execution of Ella's will on April 14, 2006. During this period, Patricia stated that she noticed Ella "seemed to become confused easily," and "[s]he did not seem to remember anything. She did not seem to understand things she was told." Even though Patricia does not provide sufficient details to support her conclusions regarding Ella's confusion, and she fails to state what Ella could not remember and what Ella could not comprehend, *see Singleton*, 305 S.W.2d at 383, it does not effect our analysis because there is no indication by Patricia that Ella was suffering from confusion or a lack of comprehension on November 3, 2006. Ronnie and Jimmy's summary judgment evidence thus creates no more than a mere suspicion or surmise that Ella lacked testamentary capacity at the time of the codicil execution ceremony.

Finally, Ronnie and Jimmy make a brief argument that Ella lacked testamentary capacity on November 3, 2006, the day she executed the codicil. Ronnie and Jimmy submit Ella's testimony at the cloud of title hearing which was also held on November 3, 2006. They argue that Ella did "not remember vital facts and [was] confused." The record shows Ella felt threatened by Ronnie and Jimmy, and she testified she had excluded Ronnie and Jimmy from eligibility to be her guardian and had asked Jimmy not to call anymore. Although Ella was defensive during cross-examination at the hearing, she was nonetheless articulate and lucid. Accordingly, Ronnie and Jimmy's summary judgment evidence fails to raise a fact issue regarding Ella's testamentary capacity on November 3, 2006 when she signed her codicil.

**D.**     **Undue Influence**

Mask bore the burden of establishing there was insufficient evidentiary support to raise a fact issue regarding an element of undue influence. Undue influence requires the existence of testamentary capacity which has been "subjected to and controlled by a [dominant] influence or power." *Rothermel v. Duncan*, 369 S.W.2d 917, 921 (Tex. 1963). The elements of undue influence in a will contest are:

> (1) the existence and exertion of an influence; (2) the effective operation of such influence so as to subvert or overpower the mind of the testator at the time of the execution of the testament; and (3) the execution of a testament which the maker thereof would not have executed but for such influence.

*Id.* Although undue influence may be established by direct or circumstantial evidence, circumstantial evidence must be probative of the issue and must not be equally consistent with the absence of an influence. *Estate of Davis v. Cook*, 9 S.W.3d 288, 292-93 (Tex. App.—San Antonio 1999, no pet.). Mere opportunity to unduly influence a testatrix is not sufficient to show actual influence. *Id.* at 293.

> [I]nfluence is not undue unless the free agency of the testator was destroyed and a testament produced that expresses the will of the one exerting the influence. . . . [O]ne may request or even importune and entreat another to execute a favorable dispositive instrument; but unless the importunities and entreaties are shown to be so excessive as to subvert the will of the maker, they will not taint the validity of the instrument with undue influence.

*Rothermel*, 369 S.W.2d at 922.

Having determined that Ronnie and Jimmy failed to raise a fact issue regarding Ella's testamentary capacity, we must determine whether there is sufficient evidence to raise a fact issue regarding whether her capacity was overcome by a dominant influence. *Id.* at 921. Ronnie and Jimmy presented the affidavit of Patricia to show the undue influence of Kessler, Drought, Alexander, and Meyer over Ella to sell her property and exclude Ronnie and Jimmy from her estate

affairs. Patricia stated that on more than one occasion Ella refused to meet with Drought and Kessler but after talking to Alexander, Ella asked Patricia to take her to meet with them. Patricia took Ella and was present at the meeting where Drought and Kessler asked Ella "questions . . . about her real property." Patricia recounted other events where Ella "expressed dismay . . . because she did not want to sell her property to Joe Meyer. I even witnessed Ella . . . making her concerns known to William Kessler." Patricia's affidavit evidence pertains to the sale of Ella's real property and not the creation of Ella's will or codicil; hence, there is no evidence Drought and Kessler exerted undue influence over Ella regarding her will or codicil. Moreover, Patricia's statements indicate Ella decided who she wanted to discuss her business with, and Ella was strong enough to "make her concerns known" to her attorneys. We conclude there is no evidence that Kessler, Drought, Alexander, and Meyer's influence existed as a power over Ella to make a particular will or codicil.

Ronnie and Jimmy claim Ella was unduly influenced by their sister, Robby Rogers, to sell Ella's property and exclude Ronnie and Jimmy from Ella's will and codicil. Examining the first element of undue influence, Ronnie and Jimmy presented the affidavits of Patricia and Watkins to circumstantially establish that Ella was unduly influenced by Robby Rogers. Robby Rogers lived with Ella until January 2006 and was her attorney-in-fact at various times. Patricia described evidence of Robby Rogers's abuse of Ella's daughter, Bobbie Lou Rogers, who also lived with Ella. Patricia stated that Ella attempted to make Robby Rogers move from Ella's home on more than one occasion. Watkins stated that Ella "came to [her] home on occasions fearful of Robby Rogers for herself, [Robby's] mother, and Robby's children." Watkins "witnessed Bobbie Lou call the police to report Robby Rogers for abuse." We conclude Ronnie and Jimmy presented some evidence

raising a fact issue as to whether Robby Rogers's influence existed over Ella as to Ella's testamentary desires.

Having determined that there is some evidence that Robby Rogers's influence existed regarding Ella, we examine the second element of undue influence and conclude there is no evidence that Robby Rogers's influence overpowered Ella's mind during the drafting or execution of Ella's will or codicil. In fact, there is evidence to the contrary: (1) Robby Rogers had not been living with Ella for approximately three months prior to the time Ella executed her will and for approximately nine months prior to the time Ella executed the codicil to her will; (2) Robby Rogers was not present when Ella executed her will or codicil; and (3) although Robby Rogers was one of several beneficiaries under the will, she was not a beneficiary under the codicil. Furthermore, Mask presented video and affidavit evidence that Ella read, understood, and desired to execute the codicil in question. *Scott v. Townsend*, 106 Tex. 322, 166 S.W. 1138, 1142 (1914) (holding that where undue influence is at issue, "declarations of the testator expressive of a mental state produced by such influence, whether made contemporaneously with the execution of the will or within a reasonable time before or after its execution, are admissible as an aid in the determination of the question of his free agency in making the will"). Ronnie and Jimmy contend that because they were beneficiaries under previous wills, this is some indication that Robby Rogers unduly influenced Ella. Ella's change of heart regarding the disposition of her estate is not proof of undue influence. *See id.* at 923-24. Because Mask successfully negated the second element of undue influence, we conclude the probate court properly granted his summary judgment on the issue of undue influence. *See id.*

**E.      Fraud**

Ronnie and Jimmy contend the probate court erred by granting summary judgment as to their fraud claims.  According to Ronnie and Jimmy, "there was fraud perpetrated on the testator."

"Fraud in the factum is present when the testator is misled as to the nature or content of the instrument executed." *Guthrie v. Suiter*, 934 S.W.2d 820, 832-33 (Tex. App.—Houston [1st Dist.] 1996, no writ) (citing *Sockwell v. Sockwell*, 166 S.W. 1188, 1188 (Tex. Civ. App.—Texarkana 1914, writ ref'd).  Ronnie and Jimmy presented no evidence that anyone misled Ella about the nature and content of her will or codicil, and Mask presented video and affidavit evidence that Ella read and understood the contents of the will and codicil that she executed.  Ronnie and Jimmy have, therefore, failed to raise a fact issue on the claim of fraud in the factum.

Fraud in the inducement exists when the testatrix is induced to sign a will based on an erroneous belief about some extrinsic fact.  *Holcomb v. Holcomb*, 803 S.W.2d 411, 415 (Tex. App.—Dallas 1991, writ denied).  "[U]ndue influence and fraud in the inducement . . . are sometimes viewed as separate and distinct grounds for invalidating a will. [Our] courts . . . , however, treat the two as one, viewing undue influence as a species of fraud." *Id.* (citing *Curry v. Curry*, 153 Tex. 421, 270 S.W.2d 208, 214 (1954)).  For the same reasons that we found no fact issue regarding undue influence, we find no fact issue regarding fraud in the inducement.  *See Guthrie*, 934 S.W.2d at 833.

**F.      Mistake**

Ronnie and Jimmy contend Ella was mistaken "about material issues that led her to execute the will that she executed."  Although Ronnie and Jimmy provide no case law supporting their point,

> [A] mistake of fact or law alone will not defeat the probate of a will even though the testator would have made a different will but for the mistake inducing the making of the will. Coupled with undue influence or fraud perpetrated upon the testator, such a mistake is sufficient to deny probate of such an instrument.

*Holcomb*, 803 S.W.2d at 415. Having found no evidence of undue influence or fraud to support a claim of mistake, we conclude the probate court did not abuse its discretion in granting Mask's motion for summary judgment on this point.

## G. Summary

Because Ronnie and Jimmy did not raise an issue of material fact, we conclude the probate court did not abuse its discretion in granting summary judgment in favor of Mask. Ronnie and Jimmy's first issue is overruled.

### MOTION FOR CONTINUANCE

In their third issue, Ronnie and Jimmy contend the probate court erred by denying their motion for continuance. A trial court may order the continuance of a summary judgment hearing if it appears "from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition." TEX. R. CIV. P. 166a(g); *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). In addition to proving additional time is needed, the party requesting continuance must identify the specific evidence needed, demonstrate why such evidence is material, and establish that the party has used due diligence to obtain the evidence. *Rocha v. Faltys*, 69 S.W.3d 315, 319 (Tex. App.—Austin 2002, no pet.). We review a trial court's order denying a motion for continuance for a clear abuse of discretion based on the unique facts of each case. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002). "A trial court 'abuses its discretion when it reaches a decision so arbitrary and unreasonable

as to amount to a clear and prejudicial error of law.'" *Id.* (quoting *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985)).

Ronnie and Jimmy's motion for continuance presented multiple grounds for postponing the deadline to submit final summary judgment evidence. Ronnie and Jimmy's grounds can be summarized as: (1) Mask's motion for summary judgment was filed shortly after Mask's answer; (2) Ronnie and Jimmy were preparing for the summary judgment hearing and the jury trial at the same time; (3) Mask delayed discovery by using frivolous motions and forcing Ronnie and Jimmy to file a motion to compel; (4) Mask filed additional summary judgment evidence and objections after the hearing with the court's permission; and (5) the unobtained evidence would support Ronnie and Jimmy's allegations.

Analyzing the record before us, the will contest was filed December 27, 2006. Mask's motion for traditional and no-evidence summary judgment was filed on February 9, 2007. Subtracting seven days for potential holiday interruptions, we conclude Ronnie and Jimmy had more than a month to prepare their case before Mask's motion for summary judgment was filed. Furthermore, the probate court granted Ronnie and Jimmy's motion for continuance on February 28, 2007 and postponed the summary judgment hearing for ninety days. Mask did not request a jury trial until March 16, 2007, so Ronnie and Jimmy had two and a half months to focus solely on the summary judgment hearing, and Mask's April 12, 2007 request for a protective order was denied. Ronnie and Jimmy had more than five months to request discovery from the time they filed their will contest until the summary judgment hearing. The record shows that Ronnie and Jimmy had "ample time to conduct, and did conduct, discovery" resulting in nine depositions, ten affidavits, and numerous supporting documents. *See BMC Software Belg., N.V.*, 83 S.W.3d at 800. Importantly,

*during* the summary judgment hearing, the probate judge granted seven additional days to both parties to submit additional summary judgment proof. During this extension, Ronnie and Jimmy filed twenty-six additional exhibits. Although the probate judge denied Ronnie and Jimmy's post-hearing motion for continuance, the judge effectively granted a seven-day continuance to both parties. More importantly, however, while Ronnie and Jimmy claimed to need particular evidence, Ronnie and Jimmy failed to state with particularity how the evidence was material and how they were diligent in obtaining it. *Rocha*, 69 S.W.3d at 319. Because we find the probate court did not abuse its discretion by denying Ronnie and Jimmy's motion for continuance, we overrule Ronnie and Jimmy's third issue.

### LACK OF JURISDICTION TO PROBATE WILL AND APPROVE FINAL ACCOUNTING

Ronnie and Jimmy, in their final issue, argue that the assigned statutory probate judge lacked jurisdiction to probate the will and codicil and approve a final accounting pending this appeal. In counties such as Uvalde, with no statutory court having probate jurisdiction, all probate matters must be filed in the county court. *See* TEX. PROB. CODE ANN. § 5(b) (Vernon Supp. 2007). However, in contested probate matters, on the motion of a party to the contest, a statutory probate judge shall be appointed to preside over the contested issues as provided by section 25.0022 of the Texas Government Code.[6] *Id.* at § 5(b)(1). The assigned statutory probate judge obtains the jurisdiction and authority granted to a statutory probate court by Probate Code sections 5A and 5B concerning the contested issues. *Id.* § 5(b-2). Upon the resolution of the contested matter, including the appeal of a matter, the statutory probate judge must transfer the resolved portion of the case to the county

---

[6] TEX. GOV'T CODE ANN. § 25.0022 (Vernon Supp. 2007) (describing the eligibility of statutory probate judges).

court for further proceedings consistent with the orders of the statutory probate judge. *Id.* The county court continues to exercise jurisdiction over the management of the estate, with the exception of the contested matter, until final disposition of the contested matter by the assigned statutory judge. *Id.* at § 5(b-4).

Here, Ronnie and Jimmy filed a motion requesting the assignment of a statutory probate judge to the contested probate matter. Presiding Judge Guy S. Herman assigned Judge William T. McGee to "preside over all contested issues in the [Estate of Ella V. Mask] cause with all rights, powers, privileges held by the regular judge of the court assigned and the attendant jurisdiction of a Statutory Probate Court." Mask argues that the "contested probate matter" assigned to Judge McGee included the: (1) probate of the will and codicil; (2) issuance of letters testamentary; and (3) issuance of other orders as necessary to carry out the probate of the will, in accordance with Mask's application for probate. We agree. Contested probate matters include all matters in a probate proceeding where the pleadings on file demonstrate that the parties to the suit have adopted adversarial positions. *Jackson v. Thompson*, 610 S.W.2d 519, 522 (Tex. Civ. App.—Houston [1st Dist.] 1980, no writ). Clearly, Ronnie and Jimmy took an adversarial position to Mask by filing a will contest, asserting that Ella's will "should not be probated but that it should be declared invalid" and requesting the "Court enter an order in accordance herewith." Accordingly, Judge McGee, a statutory probate judge, had jurisdiction to resolve the contest, probate the will and codicil in dispute, and issue letters testamentary. *See* TEX. PROB. CODE ANN. § 5A (Vernon Supp. 2007). However, we find no evidence in the record that Ronnie and Jimmy challenged the final accounting of temporary administrator, therefore the final accounting was not a contested issue. Consequently, Judge McGee's order approving the temporary administrator's final accounting is void for want of

jurisdiction, and we sustain Ronnie and Jimmy's issue by reversing the order approving the temporary administrator's final accounting.[7] *See* TEX. PROB. CODE ANN. § 5(b)(1), (b-2) (Vernon Supp. 2007)

### DAMAGES FOR FRIVOLOUS APPEAL

Mask filed a "Motion Seeking Damages for Appellant's Frivolous Appeal," alleging that Ronnie and Jimmy "have no reasonable chance of winning this appeal and are pursuing it solely to tie up the Estate, preventing it from paying its debts and distributing its assets to its rightful beneficiaries." Mask offers his summary judgment evidence as proof that Ronnie and Jimmy cannot prevail on appeal.

Appellate courts have the discretion to award damages for frivolous appeals. TEX. R. APP. P. 45. "[W]e exercise [this discretion] with prudence and caution, and only after careful deliberation," and we impose sanctions "only in circumstances that are truly egregious." *Chapman v. Hootman*, 999 S.W.2d 118, 124 (Tex. App.—Houston [14th Dist.] 1999, no pet.). In determining whether sanctions are appropriate, we must not look to matters outside our purview, rather we must carefully consider "the record, briefs, or other papers filed in the court of appeals." *See* TEX. R. APP. P. 45; *Herring v. Welborn*, 27 S.W.3d 132, 145 (Tex. App.—San Antonio 2000, pet. denied). An award of sanctions on appeal "will be imposed only if the record clearly shows the appellant has no reasonable expectation of reversal." *Campos v. Inv. Mgmt. Props., Inc.*, 917 S.W.2d 351, 356 (Tex.

---

[7] Ronnie and Jimmy make a vague argument regarding a lack of notice of the hearing to admit the will to probate. Ronnie and Jimmy fail to cite any statutes or case law supporting their contention and waive their complaint due to inadequate briefing. *See* TEX. R. APP. P. 38.1(h); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284-85 (Tex. 1994). However, upon a cursory examination of the record, we find Ronnie and Jimmy were given notice by Judge McGee of his intention to probate the will in Uvalde on August 28, 2007 via letter dated August 20, 2007.

App.—San Antonio 1996, writ denied). Therefore, if Ronnie and Jimmy's argument has "a 'reasonable basis in law and constitute[s] an informed, good faith challenge to the trial court's judgment,'" sanctions are not appropriate. *See Herring*, 27 S.W.3d at 145 (citing *Gen. Elec. Credit Corp. v. Midland Cent. Appraisal Dist.*, 826 S.W.2d 124, 125 (Tex. 1991) (per curiam)).

Although Ronnie and Jimmy have employed attorneys to represent them in other phases of this contest, they have presented this appeal *pro se*. While Ronnie and Jimmy failed to sufficiently brief some of their issues and sometimes failed to provide appropriate supporting documents from the clerk's record, Ronnie and Jimmy have made a good-faith challenge to the trial court's judgment. *See Mallios v. Standard Ins. Co.*, 237 S.W.3d 778, 783 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). Even though Ronnie and Jimmy are not excused from proper briefing requirements, *see Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184-85 (Tex. 1978), we decline to award sanctions under these circumstances. Mask's motion for sanctions is denied.

## CONCLUSION

For the reasons set forth above, we affirm the probate court's summary judgment in favor of Mask and the orders probating the will and codicil and issuing letters testamentary. We reverse the order approving the temporary administrator's final accounting because it was not a contested matter assigned to the probate court, and we deny Mask's motion for sanctions. This cause is remanded for further proceedings consistent with this opinion.

Alma L. López, Chief Justice